556 So.2d 991 (1990)
Larry HARGRODER Plaintiff-Appellee,
v.
PROTECTIVE LIFE INSURANCE COMPANY Defendant-Appellant.
No. 88-1005.
Court of Appeals of Louisiana, Third Circuit.
February 7, 1990.
Writ Denied April 16, 1990.
*993 Brinkhaus, Dauzat & Falgoust, James Dauzat, Opelousas, for plaintiff/appellee.
Dubuisson & Dubuisson, Edward Dubuisson, Opelousas, for defendant/appellant
Before GUIDRY, STOKER and YELVERTON, JJ.
STOKER, Judge.
This is a suit by Larry Hargroder to recover benefits, penalties and attorney's fees from Protective Life Insurance Company under a group hospitalization policy which was issued to the St. Landry Parish School Board covering teachers employed in its system. Larry is an employed, tenured teacher.
Larry alleges that the policy provides coverage for reimbursement of medical expenses incurred by him for himself and his family for the calendar years of 1983 and 1984. Protective made some payments under The Plan to Larry for medical expenses incurred for himself, his son Marty, his daughter Leslie, and his wife Norma, but denied coverage for the major portion of the expenses on the grounds that the expenses for treatment of alcoholism and drug abuse were excluded from coverage under The Plan or because the facility in which treatment was rendered was not a hospital. The trial court held in favor of plaintiffs, except as to Norma Hargroder's medical expenses, and awarded penalties and attorney's fees. Protective Life appeals the award of medical expenses for Larry, Marty and Leslie Hargroder and the award of penalties and attorney's fees. We affirm.

FACTS
Larry Hargroder was employed by the St. Landry School Board as a tenured teacher in 1983 and 1984 and he and his wife and dependent children were insured under The Plan for those years. The evidence at trial established that the expenses Protective has resisted paying are for the treatment of alcoholism, drug abuse and related mental disorders.
The evidence established that Larry was an alcoholic and his unpaid expenses were entirely for the treatment of that malady. Larry claims he incurred $1,171.50 for treatment in 1983 and $1,350.50 in 1984, and Protective has paid $256.20 toward liquidation of that claim. Protective resisted payment of Larry's claim because of the alcoholism exclusion under The Plan.
Marty Hargroder, Larry's dependent and insured son, allegedly incurred $7740 in 1983 and $4696 in 1984 for treatment of substance abuse. Protective paid $330 on the 1983 expenses, but later tried to retrieve the money it had paid, and it paid nothing on the 1984 expenses. Payment was denied by Protective because treatment was for drug abuse.
Leslie Hargroder, Larry's dependent and insured daughter, allegedly incurred $195 in 1983 and $4,437.50 in 1984 for treatment of substance abuse. Protective paid $105 on the 1984 expenses, nothing on those incurred in 1983 and resisted the balance on the ground that there was no coverage.
The trial court held that the exclusion of alcohol and drug abuse treatment is invalid because rejection of the coverage was made by the Superintendent of Schools for St. Landry Parish rather than by the School Board, as required by LSA-R.S. 17:83 and 17:1221. Therefore, coverage was legally imposed under LSA-R.S. 22:215.5.

ASSIGNMENTS OF ERROR
Protective Life Insurance appeals the trial court's judgment, assigning as errors the following:
1. The trial court erred in holding that the alcohol and drug abuse exclusion in *994 Protective Life Insurance Company's group policy was not effective. (LSA-R.S. 22:215.5)
2. The trial court erred in the amounts awarded to the plaintiff because the award was based only on an unsubstantiated summary of bills allegedly incurred by the Hargroder family and not on what was actually submitted to Protective Life Insurance Company.
3. The trial judge erred in assessing penalties and attorney's fees in this case. (LSA-R.S. 17:83, LSA-R.S. 22:657)
4. The judgment provides for interest at the rate of 12 percent per annum, and this should be adjusted, in the event that the award is affirmed, to reflect the charge in legal interest set out in Louisiana Civil Code Article 2924.
Plaintiff has not appealed the judgment insofar as it held against coverage of Norma Hargroder's medical expenses.

OPINION

COVERAGE
Protective Life contends the trial court erred in holding that the alcohol and drug abuse exclusion in the group policy was not effective. The trial court has set forth excellent written reasons for judgment on this issue which we set forth here in part:

APPLICATION OF THE EXCLUSION TO LARRY, MARTY AND LESLIE AND ITS EFFECTIVENESS
"R.S. 22:215.5 as of October 1, 1982 made it mandatory that any group health insurance policy issued under R.S. 22:215 must contain an `... option to be exercised by the policy holder covered benefits for the treatment of alcoholism and drug abuse, rendered or prescribed by a physician licensed in this state, received in any licensed hospital or in any other public or private facility ... including freestanding, non-hospital chemical dependency units.' Subparagraph B of that section directed any insurer that had issued a covered policy prior to October 1, 1982 to convert it to conform with the statute.
"The policy in this case (The Plan) was issued January 1, 1981 with an effective date of January 15, 1981 (Exhibit P-1). The St. Landry Parish School Board is the `policyholder'. The policy under the section captioned `Schedule of Insurance' (p.2) `Major Medical Expense Benefits' for calendar year maximum of $2500 for mental or nervous disorders. The term `mental or nervous condition' is defined by the policy as `... a neurosis, psychoneurosis, psychopathy, psychosis, or mental or emotional disease or disorder of any kind.' (Policy p. 9). Payment of major medical benefits for a `mental or nervous condition' was limited to 50% of the total expenses for a calendar year limited to a maximum of $2500.00 per calendar year per covered family member. (Policy p. 21).
"Treatment for alcoholism and drug abuse is not an excluded item under the `Exclusions, Limitations and Deductions' portion of the policy (Policy pp. 25-25). [sic] But Protective had issued a booklet labeled `Group Insurance BookletCertificate'. (Court # 3). Treatment for alcoholism or drug abuse is excluded from coverage. (Booket [sic] p. 26). The booklet states, however, at page 1 that the benefits and provisions described in it are subject to the terms and conditions of the policy, and the policy alone constitutes the entire contract. In the beginning portion of the policy (P-1) there is an undated sheet of paper under Protective's letterhead which sets out the optional coverage for alcoholism and drug abuse as provided for by the statute. The option `No' is selected in both instances and is signed `St. LandryPolicyholder by Henry Monteilh TitleSuperintendent.' (P-8) It was stipulated that Protective received this ostensible exercise of optional coverage. The plaintiff offered P-8 which was an option exercise dated `10/11/82' which the Court construes as the one that is applicable to this case. Bryant Goudeau, a retired school teacher and now a member of the school board testified that Henry *995 Monteilh did not have the authority to execute the option for coverage. (P-8) Robert Meadors, Protective's representative, testified that his company received nothing from the St. Landry Parish School Board President agreeing to major changes in the policy which would have included the alcoholism and drug abuse option for coverage.
"Henry Monteilh, the Superintendent for St. Landry Parish when the Hargroder claims arose, testified that he received a memorandum introduced as `PLI C# 4' informing the School Board of the 1982 legislative amendments to R.S. 22:215.5, and the additional costs to the School Board for the treatment of alcoholism and drug abuse would be 1% of the premium. The memorandum indicates that an option form was included. Presumably this is P-8 that was executed by Monteilh on `10/11/82' indicating that coverage for alcoholism and drug abuse had been rejected. Monteilh admitted that he checked `no' on the option for [sic] because he did not have the authority to do anything to increase insurance rates. But he also admitted that only the School Board could make policy changes upon the recommendations of the board's insurance committee. This was never done. LSA-R.S. 17:1221 gives parish school boards authority `... to make contracts of insurance with any insurance company ...' Additionally, R.S. 17:83 provides that school board contracts shall be signed by the president of the school board. There was no evidence offered which would establish that the St. Landry School Board ever gave Henry Monteilh authority to execute the option. The powers and duties of school Superintendent are listed in R.S. 17:91 through 95. These statutes did not give him the authority to execute the option on behalf of the school board. Thus, the Court concludes that the option (P-8) executed by Henry Monteilh on `10/11/82' was invalid since it exeeded [sic] his statutory authority or any authority established by the evidence. Since R.S. 22:215.5 makes coverage for alcoholism and drug abuse part of the policy and these coverages were never validly excluded then there was coverage under the Plan for alcoholism and drug abuse for the calendar years 1983 and 1984.
"The Court is also satisfied that Opelousas Foundation came within the definition of a `... freestanding, non-hospital chemical dependency unit(s)' as provided for in R.S. 22:215.5.
"The policy provides for a limitation of 50% of the charges for treatment of mental and nervous disorders with a $2500.00 maximum per calendar year. Neither limitation applies to treatment for alcoholism or drug abuse because coverage was imposed by the statute and the policy does not place any other limitation on drug abuse and alcoholism except the invalid exclusion.
"Protective might argue that the school board as the insured and plaintiff as beneficiary under the policy are estopped to deny Henry Monteilh's authority to execute the waiver. This is an affirmative defense and was not pled. C.C.P.-art. 1005. Further, the evidence in the record probably does not support estoppel."
Protective Life further urges on appeal that the School Board adopted a resolution delegating to the superintendent and the administrative staff the responsibility of administering the total insurance program. We have reviewed this resolution and find that, although it delegates authority to administer the program, it expressly reserves to the Board the responsibility to authorize a medical insurance program and further states that any changes in specifications considered necessary because of changes in law will be brought before the Board for discussion and adoption. The superintendent was clearly without authority to reject coverage for alcohol and drug abuse, upon revision of the applicable statutes, without first presenting it to the Board and obtaining authority to do so.
Protective Life further urges that plaintiff is estopped from urging that Monteilh lacked authority to reject the coverage in question on behalf of the School Board. In support of this contention Protective *996 Life offers two arguments. In its brief Protective Life argues extensively for what would amount to the application of the doctrine of apparent authority. Protective Life also urges that since the policy was found to be in effect, although the application for the policy was signed solely by the superintendent, his signature should be sufficient to bind the School Board to the rejection of coverage for treatment of alcohol and drug abuse. We note parenthetically, that the doctrine of apparent authority is a judicially created concept of estoppel which operates in favor of a third party seeking to bind a principal for the unauthorized act of an apparent agent. Gottlieb v. Tulane Univ. of Louisiana, 529 So.2d 128 (La.App. 4th Cir.), writ denied, 532 So.2d 766 (La.1988).
Estoppel is an affirmative defense. As estoppel was not pleaded by defendant, we cannot consider it under either point discussed above. As an affirmative defense estoppel must be specifically pleaded. LSA-C.C.P. art. 1005.
At this point we shift our deliberation to consider the situation presented by absence of an effective rejection of coverage for treatment of alcohol and drug abuse. The tenor of plaintiff's argument is that the policy affords such coverage unless it is specifically rejected by the policyholder. This is not quite correct, although the legal effect may be the same. Under its specific terms the policy does not afford such coverage.
Obviously, the basic group policy of Protective Life Insurance Company did not provide coverage for treatment of alcohol and drug abuse. Otherwise, it would not be necessary to invoke the provisions of LSA-R.S. 22:215.5 relative to the option which must be offered to the policyholder. In this case the option was offered. This is not a case where the option was not offered. In that respect this case is distinguishable from Rudloff v. Louisiana Health Services & Indem., 385 So.2d 767 (La.1979) where the insurer did not offer the optional insurance coverage. In this case, if it is correct, as held by the trial judge, that rejection of the optional coverage by Superintendent Montheilh was ineffective, then the offer by Protective Life was neither accepted nor rejected. The trial court's finding of coverage for treatment of alcohol and drug abuse would necessarily have to rest on a holding that failure to reject resulted in acceptance by operation of law.[1]
The result reached by the trial court is correct, but we reach the same result by an extension of the rationale and holding of the Rudloff case. Rudloff involved a case under a Louisiana statute, LSA-R.S. 22:213.2, which requires insurers issuing hospitalization policies to offer coverage for mental and nervous disorders. In determining the effect of the failure of the insurer in Rudloff, Blue Cross, to make the required offer, the Supreme Court looked to the Louisiana uninsured motorist statute, LSA-R.S. 22:1406D(1)(a). The court noted that the two statutes were not identical but were analogous. The court then considered legislative intent in enacting LSA-R.S. 22:213.2, which was to promote the availability of mental disorder coverage in group health and accident insurance policies. To give effect to that intent the court concluded "that the Blue Cross policy *997 should be read as though the statutorily mandated offer had been tendered and accepted."
In our case the offer by Protective Life of coverage for treatment of alcohol and drug abuse was received by the parish superintendent of schools. If this receipt by the superintendent (as distinguished from giving notice to the School Board through its president, for example) should be deemed ineffective notice, then this case clearly would be governed by Rudloff. If receipt of the offer by the superintendent should be deemed as transmission of the offer to the School Board itself, what then?
As we read the opinion of the Supreme Court in Rudloff, we find that the result would be the same whether the offer of coverage was properly offered or not. In Rudloff the Supreme Court analogized the insurance contract in question to uninsured motorist coverage despite the fact that the statutory base applicable to UM coverage was lacking in Rudloff. Citation of authority is not necessary to illustrate that in Louisiana rejection of UM coverage by a policyholder is subject to the most rigid standards and controls. Unless a rejection of UM coverage runs the gauntlet of technical requirements, the rejection will be invalidated, and coverage will be deemed to apply. Considering these precepts, we conclude that judicial construction of the intent of the legislature in enacting statutes requiring the offering of certain coverages in various kinds of insurance contracts requires strict construction in favor of the insured under the contracts. We conclude that public policy in this context requires that rejection of coverage for treatment of alcohol or drug abuse be made in absolutely proper form. Otherwise, no rejection will be deemed to have been made. The result will be that the offer shall be deemed to have been accepted.
For the reasons given above we hold that coverage for treatment of alcohol and drug abuse was afforded by Protective Life to plaintiff and his dependents. Therefore, the trial court's holding to this effect will be affirmed.

MEDICAL EXPENSES
Protective Life contends in this assignment that the trial court erred in computing the amounts of the awards by adopting the unsupported figures set forth in plaintiff's summary of medical expenses. The trial court allowed the summary to be introduced into evidence, subject to further proof and connexity by plaintiff. The only other proof offered by plaintiff was his own testimony that the exhibit was a summary of his family's medical expenses for 1983 and 1984. However, some of the medical expenses are corroborated by the medical bills and insurance papers filed into evidence by Protective Life.
It is plaintiff's burden to prove with legal certainty every item of the damages claimed. This burden must be borne by competent evidence showing the extent of the damage and plaintiff's own uncorroborated estimate of the value of the loss is insufficient. Smith v. White, 411 So.2d 731 (La.App. 3d Cir.), writ denied, 413 So.2d 508 (La.1982); Freeman v. G.T.S. Corp., 363 So.2d 1247 (La.App. 4th Cir.1978). Also, Cloney v. Travelers Ins. Co., 253 So.2d 83 (La.App. 1st Cir.), writs denied, 259 La. 871, 872, 253 So.2d 212 (1971); Poche v. Frazier, 232 So.2d 851 (La.App. 4th Cir.), writ denied, 256 La. 266, 236 So.2d 36 (1970).
Accordingly, the special damages awarded for medical expenses must be reduced to reflect the amounts actually supported by the evidence. Those amounts supported by the evidence are as follows: Leslie Hargroder$5235; Marty Hargroder$3820; Larry Hargroder$941.50.
The trial court held that the coverage fell under the major medical benefits part of the policy, which provides payment for 80% of the covered charges after exhaustion of the annual deductible and not to exceed $500,000. Protective Life argues, nevertheless, that the coverage should be classified as treatment of a mental or nervous condition and that the policy contains a provision limiting payment of the covered expenses to 50%, subject to a maximum benefit of $2500 per year. At *998 trial, the second vice president of group health claims for Protective Life testified that Protective Life has not taken a position as to whether alcohol or drug abuse is a mental or nervous disorder. The policy itself does not specifically list alcohol or drug abuse as a mental or nervous condition. Moreover, Protective Life refused to pay the medical expenses as a treatment of a mental or nervous condition when the claims were submitted. Therefore, we do not find that the trial court erred in awarding benefits under the major medical classification.
Accordingly, the judgment of the trial court awarding benefits is amended as follows: Leslie Hargroder$3864 ($5235 less $105 payment, less two annual deductibles of $150 each × 80%); Marty Hargroder $2672 ($3820 less $330 payment, less one annual deductible of $150 × 80%); Larry Hargroder$428.24 ($941.50 less $256.20 payment, less one annual deductible of $150 × 80%).

PENALTIES AND ATTORNEY'S FEES
Finally, Protective Life contends the trial court erred in awarding penalties and attorney's fees since there were reasonable grounds for denying the claims. The trial court justified its award of penalties and attorney's fees in the following statements:
"An award of penalties and attorney's fees against an insurer for failure to make payments under a hospitalization policy is governed by L.S.A.-R.S. 22:657. See Rudloff v. Louisiana Health Services and Indemnity Company, 385 So.2d 767 (La.1980); Joubert v. Business Ins. Life of America, 415 So.2d 645 (La.App. 3 Cir.1982). The statutes provide that claims under a hospitalization policy must be paid within thirty days after written notice and proof of claim are furnished the insurer unless there exists just and reasonable grounds that would put a reasonable and prudent business-man on his guard. Failure to comply with the statute subjects the insurer to a penalty of double (or 100%) of the principal amount due and a reasonable attorney's fee.
"The insurer in this case resisted payment because the policy excluded coverage for alcoholism. The Court observed earlier that Henry Monteilh's authority, as superintendant [sic] of schools, was limited by statute and he did not possess the authority to execute the alcohol and drug abuse exclusion. Since his authority was limited by statute, a prudent businessman would have inquired of him or required him to produce the authority which permitted him to sign the exclusion. In this case, a resolution of the school board. Instead Protective did nothing. It cannot now claim prudence by an act of imprudence. Accordingly, the Court finds that a penalty of 100% will be imposed on the amounts due."
We disagree that the defendant acted arbitrarily and capriciously in this case so as to incur penalties and attorney's fees under LSA-R.S. 22:657. To begin with, we do not necessarily agree with the trial court's conclusion that LSA-R.S. 22:215.5 "makes coverage for alcoholism and drug abuse part of the policy." See footnote No. 1 to this opinion. We have found coverage through an extension of the reasoning of the Supreme Court in Rudloff v. Louisiana Health Services & Indemn., supra, and our reasoning will be subject to review by the Supreme Court. Finally, we hesitate to adopt the trial court's opinion that "a prudent businessman would have inquired of [the school superintendent] or required him to produce the authority which permitted him to sign the exclusion." (Perhaps the proper term should be "rejection.") We do not reach the issue of whether insurers should inquire into the authority of school board superintendents to act as Superintendent Monteilh did in this case. We resolved the issue on the narrow and technical grounds of failure to plead estoppel. We express no opinion as to how a properly pleaded estoppel might have affected the outcome of this case.
Given the complexity and substantial nature of the legal questions presented in this case, we think that the defendant was entitled to a judicial review of those issues. For these reasons we will reverse the trial *999 court's award of penalties and attorney's fees.

INTEREST RATE
Protective Life contends the interest rate of 12% in the judgment should be amended to reflect the legal interest rate in effect subsequent to December 31, 1987, as set forth in LSA-C.C. art. 2924(B)(3). The trial court judgment stipulates an interest rate of 12% from date of judicial demand. LSA-C.C. art. 2924(B)(2)(c) sets forth the legal interest rate as follows:
"Art. 2924. Rates of legal and conventional interest; usury
"B. (2) The rate of judicial interest resulting from a lawsuit pending or filed during the indicated periods shall be as follows:
"(c) On and after September 11, 1981, until January 1, 1988, the rate shall be twelve percent per annum."
Plaintiff's lawsuit was filed on May 24, 1985 and judgment was rendered on July 16, 1987. The 12% rate of interest is therefore applicable to the judgment.

CONCLUSION
For the reasons given above, the judgment of the trial court is amended to award plaintiff, Larry Hargroder, the sum of $6964.24 as medical expenses, together with 12% interest from date of judicial demand. The award of penalties and attorney's fees is reversed and set aside. As thus amended, the judgment of the trial court is affirmed. Costs of this appeal are assessed one-half to defendant-appellant and one-half to plaintiff-appellee.
AFFIRMED AS AMENDED.
NOTES
[1] The trial court held that LSA-R.S. 22:215.5 "makes coverage for alcoholism and drug abuse part of the policy." It is debatable as to whether this statute actually writes coverage into health insurance policies or simply mandates that such coverage be offered as an option. The statute provides:

"215.5 Group, blanket and franchise health insurance, treatment for alcoholism and drug abuse
"A. Any group, blanket or franchise health insurance policy issued under R.S. 22:215 shall include as an option to be exercised by the policyholder, as defined therein, covered benefits for the treatment of alcoholism and for the treatment of drug abuse, rendered or prescribed by a physician licensed in this state, received in any licensed hospital or in any other public or private facility, or portion thereof duly authorized by the appropriate state authority to provide alcoholism or drug abuse treatment and rehabilitation services, including freestanding, nonhospital chemical dependency units.
"B. Any insurer who, on October 1, 1982, has group, blanket, or franchise health insurance policies in force shall convert such existing policies to conform to the provisions of this Section on or before the renewal dates thereof."