619 So.2d 143 (1993)
Theodore BROUSSARD, Plaintiff-Appellee,
v.
David DOMINGUE, et al., Defendants-Appellants.
No. 92-1073.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1993.
*144 J.B. Jones, Jr., Cameron, for Theodore Broussard.
Michael Steven Beverung, Lake Charles, for David Domingue, et al.
Before LABORDE, THIBODEAUX and DECUIR, JJ.
THIBODEAUX, Judge.
Wayne McElveen, in his capacity as Sheriff of Calcasieu Parish, Calcasieu Parish Sheriff's Department, and David Domingue appeal an allegedly excessive damage award of $160,000.00 to plaintiff, Theodore Broussard, in connection with misconduct by Deputy Domingue during his arrest of Broussard. The trial judge's determination of liability was not appealed.
Finding no abuse of discretion by the trial judge in his award of damages, we affirm.

FACTS
Plaintiff and his Colombian fianceé, Maria Galen, were stopped for a speeding violation while traveling in his automobile with Florida license plates on Interstate Highway 10 near Lake Charles by Deputy David Domingue of the Calcasieu Parish Sheriff's Department's narcotic unit. The entire encounter was videotaped by a camera attached to Domingue's vehicle. The tape was received into evidence. Its contents poignantly depict the entire scenario.
After exiting his vehicle, plaintiff engaged in a discussion with Domingue regarding the reason for his detention. His fiancee' exited shortly thereafter and was told to reenter the vehicle. Because of her lack of proficiency in the English language, she was hesitant in following these instructions. Broussard then attempted to explain this fact to Domingue who proceeded to arrest him for resisting arrest. Plaintiff was handcuffed and instructed to sit down. However, before he had the opportunity to comply, Deputy Domingue kicked his feet out from under him. Broussard was thrown abruptly to the ground by this maneuver, falling on his buttocks and handcuffed, immobile hands. His head also struck the bumper of Domingue's patrol car.
After immigration officers arrived and searched Ms. Galen's vehicle, Broussard was taken to the Calcasieu Parish jail.

LAW AND DISCUSSION
In finding merit in Mr. Broussard's claim of injury, the trial judge concluded that:
"The petitioner sustained serious injuries due to the actions of the deputy, in particular, his head was bruised, both wrist [sic] were injured requiring surgery, he had a straining injury to his back, he had bruises to his elbows and back, he had headaches and fainting spells, and a broken bone in his hand. Furthermore, due to the accident, defendant [sic] lost numerous days of work which he should be compensated for. In all likelihood, he will miss 6 to 8 weeks of work in the future due to an operation that must be performed on both of his wrist [sic] due to this accident."
Thereafter, the trial judge awarded Mr. Broussard a total of $160,000.00 which included an award for his medical bills of $1,130.00 related to the incident, his future *145 medical expenses of $5,000.00 as well as compensation for the pain, suffering and disability Mr. Broussard has suffered and will suffer in the future.
The defendants argue that the trial judge was clearly erroneous in his determination of the extent of Mr. Broussard's injuries. Because this was a bench trial, determinations of possible injuries suffered by Mr. Broussard were left to the trial judge. He sat as the trier of fact and made his findings related to the negligence of Deputy Domingue and injuries suffered by Mr. Broussard based upon inferences drawn from the testimony and the evidence. In order for this court to upset the factual findings of the trial court, there must exist manifest error or the findings must be clearly wrong. Thus, after a careful review of the record, if the trial court's findings of fact are not clearly wrong, we must allow them to stand even if the facts are open to more than one reasonable interpretation. Rosell v. ESCO, 549 So.2d 840 (La.1989). The factual findings of the fact finder must be given great weight by a reviewing court particularly when they are based on the credibility of witnesses, for such conclusions will not be disturbed absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973). Our review is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding made by the trial judge; there must be a further determination that the record establishes that the finding is not clearly wrong or manifestly erroneous. Stobart v. State of Louisiana, DOTD, 617 So.2d 880 (La.1993); Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985); Arceneaux, supra 365 So.2d at 1333. Where a fact finder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell, supra 549 So.2d at 845. The manifest error, clearly wrong standard of appellate review applies even when the court's decision is based partly upon the written reports, records or depositions. Bruno v. Harbert International Inc., 593 So.2d 357 (La.1992).
The trial judge found that Mr. Broussard suffered from fainting spells and headaches as a result of the May 1990 incident. Deputy Domingue asserts that the evidence is nonexistent, other than Mr. Broussard's self-serving testimony, of fainting spells and, further, that the only mention of headaches was on Mr. Broussard's first visit with Dr. Sanders post-incident. To support his contention, Deputy Domingue relies on Hargroder v. Protective Life Ins. Co., 556 So.2d 991 (La.App. 3d Cir.), writ denied, 559 So.2d 1367 (La.1990), which illustrates the plaintiff's burden of proof in a personal injury case. Mr. Broussard must prove, with legal certainty, every item of damage claimed by competent evidence showing the extent of damage. The defendants argue that Mr. Broussard failed to prove that his fainting spells and headaches existed beyond a couple of days after the incident due to his failure to present corroborating evidence. However, Hargroder only requires corroboration when the plaintiff attempts to place a value upon his loss through his testimony alone. Hargroder, supra, 556 So.2d at 997. It is admitted that Broussard suffered from headaches and fainting spells, but the defendants attempt to limit these episodes to a few days post-incident. We disagree. In his written reasons for judgment, the trial judge did not specifically state that his award was predicated on long-term fainting spells and headaches suffered by Mr. Broussard. He did find that these ailments were attributable to the actions of Domingue. The law is clear that in evaluating evidence, the trier of fact should accept as true uncontradicted testimony of a plaintiff witness absent a sound reason for its rejection, and these factual findings are to be given great weight. Behmke v. K-Mart Corp., 581 So.2d 291 (La.App. 5th Cir.1991); Jaffarzad v. Jones Truck Lines, Inc., 561 So.2d 144, 157 (La.App. 3d Cir.1990), writ denied, 565 So.2d 450 (La.1990). The photographs, taken shortly after the May 1990 incident as well as Dr. Sanders' testimony, show that Mr. Broussard suffered an injury to his head as indicated by the bruising. *146 Findings of fact regarding credibility must not be overturned unless clearly wrong. Ezell v. General Motors Corp., 446 So.2d 954 (La.App. 3d Cir.1984), writ denied, 449 So.2d 1350 (La.1984). Our review of the record, including the trial judge's written reasons for judgment and application of the legal principles expressed in Jaffarzad above, reveals that the trial judge was not clearly wrong in finding that Mr. Broussard was a credible witness and in believing Mr. Broussard's testimony that he suffered from headaches and fainting spells.
The trial court noted that Mr. Broussard had a lumbar fusion with a two level laminectomy before the May, 1990 incident. Mr. Broussard testified that he had back surgery performed in 1973, but that he experienced no pain and was able to engage in his profession as a seafood processor which involved heavy lifting.
Dr. Lynn Foret, an orthopedic surgeon, first examined Mr. Broussard on December 7, 1990, about 7 months after the incident. Dr. Foret examined an x-ray taken of Mr. Broussard's back that revealed a two-level fusion performed by Drs. Drez and Gunderson in 1973. The photographs taken shortly after the incident showed that Mr. Broussard's back was bruised. Dr. Foret testified that his cursory examination of Mr. Broussard's back revealed mostly muscular complaints in his lower back area. The doctor also noted that Mr. Broussard had some restrictions of flexion and extension in his lower back region and diagnosed Broussard as suffering from a blunt trauma to an already surgerized lumbrosacral spine, status post two-level laminectomy. Because of the pain in his neck and back, plaintiff testified he could only occasionally do his crab trapping.
On his March 27, 1991 examination, Dr. Foret noted that Mr. Broussard continued to have trouble with his chronic lower back pain. He further noted objective findings of some paravertebral muscle tenderness and palpable spasm in the lower back, especially when Mr. Broussard tried to go into full extension. Mr. Broussard gave Dr. Foret a history of being pain free in his back after his 1973 back surgery, some 17 years prior to the incident. Dr. Foret prescribed Naprosyn, an anti-inflammatory medication to relieve the pain.
Dr. Foret further testified that because Mr. Broussard had a two-level laminectomy and a posterior lateral fusion, he is at risk to re-traumatize his back upon falling. Dr. Foret also testified that it is hard for anyone to be pain free after a two-level laminectomy has been performed. He added that if there is no documentation that he had any trouble with his back prior to the May 1990 incident, that he would attribute Mr. Broussard's present back pain to that incident because the manner in which Mr. Broussard went down to the ground would traumatize the facet joints and cause lower back pain and discomfort. Dr. Foret observed that because Mr. Broussard continued crab trapping after his 1973 back surgery without pain up until the May 1990 incident, indicates that the surgeons who operated on his back accomplished a tremendous result. Usually the type of work which requires heavy lifting would cause the fusion mass to break up, and the back to be re-injured.
The defendants attempt to minimize plaintiff's carpal tunnel syndrome by arguing that the May 1990 incident merely aggravated a preexisting condition. They again contend that Dr. Foret's conclusions are undermined because Mr. Broussard failed to mention to Dr. Foret that he had carpal tunnel syndrome problems, including surgery on his right wrist. However, Dr. Foret's testimony at trial revealed that Mr. Broussard informed him about the boating accident which caused him to have problems with his right wrist but that Dr. Foret failed to include that information in his notes.
Dr. Foret described carpal tunnel syndrome as occurring when the tunnel is trapped by a collection of irritation from synovial buildup in the region, compromising the nerve and putting pressure on the nerve, hourglassing the nerve as it goes through the tunnel causing pain and the feeling of needles and pins in the hand. Broussard told Dr. Foret that he had no problems with his hands before the May *147 1990 incident. Dr. Foret's testimony further revealed that carpal tunnel syndrome could be brought on by blunt trauma and that dropping a man who weighs over 200 pounds on his hands with his wrists handcuffed behind his back is an example of the type of trauma that could cause carpal tunnel syndrome. Dr. Foret unequivocally stated that if Mr. Broussard was asymptomatic before the May 1990 incident, and began experiencing symptoms after the incident, then he would have no reason to doubt that his hand problems began at that time.
The history of being asymptomatic prior to the May 1990 incident is corroborated again by the failure of Mr. Broussard to complain to Dr. Sanders, his long time family physician, of hand problems of the type he presently suffers until after the incident. Further, Dr. Foret's testimony supports Mr. Broussard's claim of a lack of symptoms where he describes the success rate of a first time carpal tunnel syndrome surgery:
"Q. All right. Now, when you do those operations for the first time though, you generallythat's a pretty high rate of success?
A. Very high, yes, sir.
Q. And you send the person out into the world with no symptoms.
A. That's correct.
Q. And oftentimes they stay that way; no symptoms for years and years and years.
A. Yes, sir. You can cure them. The majority of people have no underlying problems the majority of times with carpal tunnel releases.
Q. So that's an operation, not like a back, where you get a cure.
A. Yes, sir. Well, you get cures from that operation, very successful operations."
According to Dr. Foret, the failure rate of a first time carpal tunnel syndrome operation is approximately 5%. Thus, even though Mr. Broussard had a previous carpal tunnel syndrome operation, he experienced no further symptoms until the date of the incident. The trial judge obviously concluded that Mr. Broussard was cured of the carpal tunnel syndrome, thus negating the defendants' argument that Domingue's actions merely caused an aggravation of a preexisting condition.
However, even if there was an aggravation of a preexisting condition, the law is clear. It makes no difference whether an accident has caused or has only aggravated the plaintiff's condition, a tortfeasor takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. American Motorist v. American Rent-All, 579 So.2d 429, 433 (La.1991); Pitard v. Stillwater Transfer & Storage, 589 So.2d 1127, 1130 (La.App. 4th Cir.1991). Although Mr. Broussard's lower back problems and carpal tunnel syndrome might have existed prior to Domingue's negligent actions, Dr. Foret testified that, absent symptoms prior to the incident, Mr. Broussard's back pain and carpal tunnel syndrome were precipitated by the incident. When a defendant's negligent conduct aggravates a preexisting condition, the victim must be compensated for the full extent of the aggravation. Miley v. Landry, 582 So.2d 833 (La.1991); Lopez v. Chicago Bridge and Iron Co., 546 So.2d 291 (La. App. 3d Cir.1989), writ denied, 551 So.2d 1323 (La.1989).
The evidence is convincing that Broussard will not have full function or sensation in his hands until about one year after the surgery. Because of a prior surgery on Broussard's right hand, the chances of full recovery are slim. The fact that the nerve is splayed out in scar tissue significantly lowers his chances of recovery in the right arm. The medical evidence indicates that Broussard will never regain the full use of his right hand. It is clear from Dr. Foret's testimony that his recommendation to Broussard to discontinue crab trapping was based on the condition of both his back and right hand. Thus, we cannot find that the trial judge was clearly wrong in finding that Mr. Broussard was disabled.

QUANTUM
By their last assignment of error, the defendants urge that the trial judge *148 abused his discretion in awarding excessive damages. The thrust of this argument is that the trial court's findings as to the extent of Mr. Broussard's injuries were clearly wrong. For that reason, it is argued that this court is not subject to the standard of review enunciated in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976) which teaches that before an appeal court may disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its much discretion in making its award. Because the extent of injuries found by the trial judge are clearly wrong, this court should make a de novo review of the quantum. We again disagree.
We have already determined that the trial judge was not clearly wrong in his assessment of the extent of plaintiff's injuries. Our review of the quantum award is, therefore, governed by the principles set forth in Coco v. Winston Ind., Inc., supra. Accordingly, in the instant case, we must first examine the record to determine whether it reveals that the trial judge abused his discretion in his award to Mr. Broussard. If we find an abuse of discretion, the award should be reduced to the maximum amount which is reasonably within the discretion of the trial court. Coco v. Winston Ind., Inc., supra; Archie v. Board of Supervisors of Louisiana State University, 543 So.2d 1348, 1352 (La. App. 1st Cir.1989).
After a careful review of the entire record, we conclude that, given the extent of Broussard's injuries which we have previously discussed, the trial judge did not abuse his discretion. The award of $160,000.00 to the plaintiff was eminently proper.
For the foregoing reasons, the judgment of the trial court is affirmed.
All costs of court at both the trial and appellate levels are assessed against the defendants.
AFFIRMED.