756 So.2d 684 (2000)
Diana H. LEAL
v.
Shelton DUBOIS and Allstate Insurance Company.
No. 99-957.
Court of Appeal of Louisiana, Third Circuit.
April 5, 2000.
*687 B. Todd Soileau, Kenneth D. St. Pé, Paul J. Guilliot, Guilliot & St. Pé, Lafayette, LA, Counsel for Plaintiff/Appellant, Diana H. Leal.
David R. Rabalais, L. Lane Roy, Preis, Kraft & Roy, Lafayette, LA, Counsel for Defendants/Appellees, Allstate Insurance Company and Shelton Dubois.
Court composed of Judge HENRY L. YELVERTON, Judge ULYSSES GENE THIBODEAUX, Judge JOHN D. SAUNDERS, Judge JIMMIE C. PETERS and Judge MARC T. AMY.
THIBODEAUX, Judge.
Diane Leal's automobile was struck by a hay baler being pulled by a truck driven by Shelton Dubois. Following the accident, she sought medical treatment for various injuries allegedly sustained in the accident, including neck, shoulder and back pain. She settled her property damage claim with Mr. Dubois' insurer, Allstate Insurance Company (hereinafter "Allstate"). She subsequently filed suit for damages. The trial court found that Shelton Dubois was at fault in causing the accident but that Mrs. Leal had not met her burden of proving by a preponderance of the evidence that she sustained personal injuries as a result of the accident. We find that the evidence clearly indicates that Mrs. Leal was injured as a result of the accident. Accordingly, we affirm the trial court's finding of liability against Mr. Dubois and Allstate. We reverse the trial court's determination that Mrs. Leal did not sustain personal injuries as a result of the accident and award damages of $53,922.66.

I.

ISSUE
The sole issue on appeal is whether the trial court erred in finding that the plaintiff, Diane Leal, was not injured as a result of the September 14, 1996 accident.

II.

FACTS
On September 14, 1996, while traveling east on Dugas Road in Lafayette Parish, Mrs. Leal's automobile was struck by a hay baler being pulled in the opposite direction by a truck driven by Mr. Dubois. Prongs from the hay baler raked across Mrs. Leal's vehicle and grabbed her arm through an open window. A Lafayette Parish Sheriff's Deputy, Ricky Hebert, investigated the accident at the scene.
Two days after the accident, Mrs. Leal sought medical treatment at University Medical Center, essentially complaining of neck, shoulder and back pain. She continued to seek medical assistance and treatment from a variety of physicians until trial.
Mrs. Leal settled her property damage claim with Mr. Dubois' insurer, Allstate, for $1,509.74 in May 1997. At trial, Mrs. Leal introduced evidence of the positions of the vehicles at the time of the accident. Deputy Hebert and an eyewitness, Kent Moreau, testified as to events at the scene. Ample medical evidence was introduced to buttress Mrs. Leal's claims of injury. Following a trial on the merits, the trial court determined that the hay baler collided with Mrs. Leal's vehicle causing exterior damage to her car. The trial court rejected Mrs. Leal's claim that the prongs of the baler damaged the interior of her car. The trial court further concluded that Mrs. Leal failed to prove by a preponderance of *688 the evidence that she sustained any personal injuries as a result of the accident. Mrs. Leal brought this appeal.

III.

LAW AND DISCUSSION

Standard of Review
An appellate court may not set aside a trial court's finding of fact absent "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). The appellate court reviews the record in its entirety to determine whether the trial court's findings are reasonable. Id. A fact finder's selection between permissible views of the evidence cannot be manifestly erroneous. Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967 (La.1985). Although trial court findings are accorded great deference, appellate courts have a duty to ascertain whether those findings are justified by the record. Mart v. Hill, 505 So.2d 1120 (La. 1987). If an appellate court concludes that the trial court's factual findings are clearly wrong, the mere fact that some evidence in the record supports the finding does not require the court to affirm. Id.
However, appellate courts afford less deference to a trial court's findings when the lower court fails to articulate the theory or evidentiary basis for its conclusions. "Although we may accord deference to a decision of less than ideal clarity if the trial court's path may reasonably be discerned, such as when its findings, reasons and exercise of discretion are necessarily and clearly implied by the record, we will not supply a finding from the evidence or a reasoned basis for the trial court's decision that it has not found or that is not implied." Bloxom v. Bloxom, 512 So.2d 839, 843 (La.1987); LeBlanc v. Acadian Ambulance Svc., Inc., 99-271 (La. App. 3 Cir. 10/13/99); 746 So.2d 665.

Causation
The Louisiana Supreme Court articulated the burden of proof in establishing the source of an injury:
In a personal injury suit, plaintiff bears the burden of proving a causal relationship between the injury sustained and the accident which caused the injury. Plaintiff must prove causation by a preponderance of the evidence. The test for determining the causal relationship between the accident and subsequent injury is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident.
Maranto v. Goodyear Tire & Rubber Co., 94-2603, 94-2615, p. 3 (La.2/20/95); 650 So.2d 757, 759 (citations omitted); Breaux v. Maturin, 619 So.2d 174 (La.App. 3 Cir. 1993); Johnson v. Manuel, 95-913 (La. App. 3 Cir. 1/31/96); 670 So.2d 273, writ denied, 96-540 (La.4/19/96); 671 So.2d 919. The plaintiff is aided in meeting this burden by a presumption of causation:
A claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.
Lucas v. Insurance Co. of North America, 342 So.2d 591, 596 (La.1977); Housley v. Cerise, 579 So.2d 973, 980 (La.1991); Breaux, supra; Johnson, supra.
In order to defeat the presumption of causation, the defendant must show that some other particular incident could have caused the injury in question. Maranto, 650 So.2d at 761.
We first consider whether Mrs. Leal met her burden of proving that the accident caused her injuries. At trial, Mrs. *689 Leal introduced evidence of her health prior to the accident, evidence of the accident, expert medical testimony, and evidence of the temporal relationship between the accident and her injuries. Because the trial court did not explain its reasons for not attributing Mrs. Leal's injuries to the accident, we must consider whether the record supports a finding of causation.
The evidence at trial established that Mrs. Leal was in good health prior to the accident. She testified that in 1982 she had suffered neck pain caused by minor whiplash but that the pain had ceased after four months. She stated that she had not suffered any neck problems for fourteen years prior to this accident.
The record reveals that Mrs. Leal's current injuries were manifested shortly after the accident. Mrs. Leal testified that she was in pain immediately following the accident. After the pain did not subside in two days, she sought medical treatment at University Medical Center. At that time she complained of neck, shoulder and arm pain, as well as headaches. The examining physician, Dr. James Simon, observed bruising at her shoulder and mild tenderness in her muscles. He diagnosed her with soft tissue bruising.
The record includes testimony of several expert medical witnesses. Dr. David Eugster, a chiropractor with the Pinhook Chiropractic Clinic, testified that Mrs. Leal was treated by his office on October 14, 1996, for complaints of neck pain, muscle spasms, irritability, tension, loss of sleep, and headaches. Following an examination by Dr. David Barczyk, it was determined that Mrs. Leal's test results indicated that her pain was not related to a cervical disc problem. She was examined again at their clinic on October 15, 1996. Following x-rays, the doctors diagnosed Mrs. Leal with a cervical sprain/strain injury causing cerviocobrachial syndrome (pain radiating down her shoulder and arm) along with headaches and neck pain. They made the same treatment and diagnosis again the next day. Dr. Eugster's final prognosis was that Mrs. Leal had received maximum benefit from chiropractic care and discharged her. He prescribed a program of daily therapeutic exercises. Finally, Dr. Eugster noted that he believed Mrs. Leal's injuries were "directly caused" by her automobile accident on September 14, 1996, and predicted that she would have future problems with her neck and back.
Dr. Robert Franklin, who practices in the fields of physical medicine and rehabilitation, examined and treated Mrs. Leal on several occasions starting on April 23, 1997. Mrs. Leal reported injuring her neck, back and shoulder in 1996. Dr. Franklin testified that his diagnosis at that time was myofascial pain syndrome affecting the paracervical and trapezius muscalature (a soft tissue injury) and possible pathology of the cervical spine. He referred her to physical therapy and ordered hot packs, ultra sound, ice massage, fluor methane spray, neck exercise and body mechanics massage three times a week for five weeks, or approximately fifteen visits.
Ms. Margaret Rozas, a physical therapist, testified that she treated Mrs. Leal in seven visits over approximately five weeks, starting April 28, 1997.[1] Mrs. Leal informed Ms. Rozas of her accident and complained that her neck, arm and shoulder pain were worsening. Ms. Rozas confirmed that Mrs. Leal had a soft tissue injury that was more probably than not related to the accident on September 14, 1996.
Dr. Franklin again saw Mrs. Leal four times between June 13, 1997 and June 29, 1998. During this time Mrs. Leal continued to suffer neck, shoulder and back pain and did not respond to conservative treatment. Dr. Franklin noted that she no longer suffered muscle spasms and ordered MRI scans. He deduced that Mrs. Leal had disc bulges and disc herniation *690 and suggested cervical traction to pull the vertebras apart so that the disc could retreat, as well as physical therapy. Dr. Franklin concluded that Mrs. Leal's injuries were caused by the September 14, 1996 accident.
Dr. Jeffrey Laborde, a diagnostic radiologist, testified that he performed a cervical spine MRI on Mrs. Leal on June 4, 1998. He found a posterior displacement to the left lateral edge of the spinal cord at the C5-6 level caused by disc herniations at the C5-6 and C6-7 levels (slight left lateral extensions of the space between two spinal discs). His final impression was that Mrs. Leal suffered a small central subligamentous disc bulge at the C4-5 level; central focal disc herniation with cord displacement but no cord compression at the C5-6 level; and central subligamentous disc herniation with cord displacement at the C6-7 level. Dr. Laborde concluded that the condition did not cause nerve compression or blockage at that level, although it is possible that the nerve was stretched which produced symptomatology that would be consistent with Mrs. Leal's complaints.
Dr. Jack Hurst, a neurosurgeon, examined Mrs. Leal on August 12, 1998, at the defendants' request. After examining Mrs. Leal and some of her medical records, he "generally agreed" with Dr. Laborde's MRI impression that she had two herniated discs but found that there was no neuro compression at either level. He disagrees with the MRI results indicating an extruded fragment. Dr. Hurst agreed that Mrs. Leal had an authentic complaint of pain and of a bulging disc but stated that the x-rays did not support the prior neurologic findings. He further opined that the results were unsupportive of Mrs. Leal's symptoms; however, he later observed that many people have disc hernias that are completely asymptomatic. Although Dr. Hurst noted the unlikelihood of a person suffering a herniated disc without seeking prompt surgery, he affirmed that "it's very possible" that the September 14, 1996 accident caused Mrs. Leal's pain.
Our review of the record reveals that Mrs. Leal was asymptomatic prior to the accident. She experienced neck, upper back and shoulder pain after the accident. This evidence is uncontradicted in the record. Accordingly, Mrs. Leal met the burden of proving that her physical injuries were caused by the accident. Thus, we hereby determine that she presented sufficient evidence to get the benefit of the legal presumption that the accident caused her injuries.
Once the plaintiff presents sufficient evidence to give rise to a presumption of causation, the burden shifts to the defendant to show some other possible cause of the injury. Maranto, 650 So.2d at 761. The defendants failed to produce any evidence of an alternate cause of the injury. When Dr. Hurst was asked to hypothesize an alternative cause of Mrs. Leal's injuries, he sarcastically responded that our lives would be easier if God printed "car wreck" or "slip and fall" on each disc hernia. Clearly, the defendants failed to present evidence sufficient to rebut the presumption of causation.
It is possible that the trial court assumed that since Mrs. Leal had suffered whiplash in 1982, that injury may be a source of her pain. However, this conclusion is completely unsupported by the record. In fact, several of the medical experts expressly stated that her injuries were unrelated to the 1982 accident and stem from the 1996 accident. Further, the event of a prior injury neither alleviates nor mitigates a defendant's liability for injuries caused by his act. "It is well settled in our jurisprudence that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct." American Motorist Ins. Co. v. American Rent-All, Inc., 579 So.2d 429, 433 (La. 1991). If a defendant's negligent act aggravates a preexisting injury, he must *691 compensate the victim to the full extent of the aggravation. Id.; Broussard v. Domingue, 619 So.2d 143 (La.App. 3 Cir.), writ denied, 625 So.2d 1042 (La.1993).
The determination of the cause and extent of a plaintiff's injuries is a question of fact that should not be reversed on appeal absent manifest error. Mart, 505 So.2d 1120; Johnson, 670 So.2d 273; Myers v. Broussard, 96-1634 (La. App. 3 Cir. 5/21/97); 696 So.2d 88. In reviewing the trial court's findings, we are concerned about the apparent lack of deference the trial court afforded the expert medical testimony and medical records. The Louisiana Supreme Court explained the proper appellate review in this instance:
Although it is true that in a personal injury lawsuit the plaintiff bears the burden of proving it was "more probable than not" his injury was caused by trauma suffered in the accident, it is not necessary for the plaintiff's medical witness to recite the proper legal jargon verbatim before the trial court can properly rely on his testimony. Appellate courts should look to the substance of a witnesses's testimony to determine whether the trial court was manifestly erroneous in finding that it establishes causation by a preponderance of the evidence.
Housley, 579 So.2d at 980 (emphasis in original).
It is necessary to decide whether Mrs. Leal proved by a preponderance that her injuries were caused by the accident at issue. We are guided by the following standard:
Proof is sufficient to constitute a preponderance when the entirety of the evidence, both direct and circumstantial, shows that the fact or causation sought to be proved is more probable than not. Thus, the plaintiff in this type of action must produce evidence from which the factfinder can reasonably conclude that his injuries, more probably than not, were caused by the negligence of the particular defendant. The plaintiff, however, does not have to conclusively exclude all other possible explanations for his injuries, because the standard is not proof beyond a reasonable doubt.
Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654, 664 (La. 1989) (citing Restatement (Second) of Torts § 328D (1965) and W. Prosser & W. Keeton, The Law of Torts § 39 at 248 (5th ed.1984)) (citations omitted).
Although there was slight evidence that Mrs. Leal was not injured in the accident, the preponderance of medical evidence supported the conclusion that her injuries resulted from the accident. Given the expert medical evidence presented by the plaintiff and the defendants' failure to present a possible alternate cause of the injury, we find that Mrs. Leal's injuries were caused by the accident. Ergo, we hold that the trial court's conclusion that Mrs. Leal was not injured in the accident was manifestly erroneous.

Damages
Having determined that the trial court was manifestly erroneous in finding that Mrs. Leal's injuries were not caused by the 1996 accident, we now consider an award of damages. In Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977), the supreme court clarified the standard of review in instances in which an appellate court questions the adequacy of the trial court's monetary award. In such instances, the reviewing court may disturb the award only to the extent of raising or lowering it to the nearest point within reasonable discretion. Id. However, the principles espoused in Coco are inapplicable when the trial court made no award to compensate for injuries resulting from the accident. Mart, 505 So.2d 1120. In that circumstance, the appellate court should make a res nova determination of the appropriate total amount of damages to be awarded to the plaintiff for the injuries sustained. Id.
*692 The evidence shows that Mrs. Leal suffered two herniated discs with no significant neurological impact, a subligamentous disc bulge, and a soft tissue injury to her trapezius muscle producing pain in her neck, shoulder and upper back. We find that she is entitled to awards for both general and special damages.

General Damages
Given the circumstances of this case, we feel that a general damages award of $50,000 is reasonable compensation for Mrs. Leal's injuries. In light of Mrs. Leal's injuries, the continued pain in her neck, back and shoulder, her headaches, loss of sleep, diminished capacity to perform daily tasks and general loss of enjoyment of life, we find that this amount is appropriate to compensate her for her injuries.

Medical Expenses
Ordinarily, a plaintiff may recover from a tortfeasor reasonable past and future medical expenses that result from the tortfeasor's conduct. Dauzat v. Canal Ins. Co., 96-1261 (La.App. 3 Cir. 4/9/97); 692 So.2d 739. The plaintiff is entitled to recover the full amount of medical expenses incurred as a result of the accident, when such expenses were occasioned in good faith. Id. Our review of the record shows that Mrs. Leal is entitled to medical expenses which are causally related to the accident in the amount of $3,922.66.

IV.

CONCLUSION
For the foregoing reasons, the portion of the trial court judgment holding that Mrs. Leal failed to prove that she sustained injuries as a result of the accident is reversed. Accordingly, we award general and special damages to Mrs. Leal in the amount of $53,922.66. The trial court's judgment is affirmed in all other respects. The defendants, Shelton Dubois and Allstate, are cast with costs.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
AMY J., DISSENTS AND ASSIGNS REASONS.
AMY, J., dissenting.
I respectfully dissent from the majority opinion. In its Reasons for Judgment, the trial court explained that while it found there was contact between the two vehicles and that damage was caused to the driver's side of the car, "[t]he evidence does not support a finding that Leal's vehicle sustained damage to any other part of its exterior or interior." In its reasons for denying the motion for new trial, the trial court indicated that it found the plaintiffs version of events not credible. In sum, it seems clear that the court believed that the accident was far less serious than the plaintiff described. In my opinion, it stands to reason that the trial court found the plaintiffs complaints of pain and injury less than credible as well. Given this type of credibility determination, I do not conclude that a reversal is warranted.
I further differ from the majority in that I do not see that the standard of review articulated in Bloxom v. Bloxom, 512 So.2d 839 (La.1987) is the appropriate standard of review in this case. Bloxom indicates that deference is afforded a decision if the trial court's reasoning can be implied by the record. Only when the trial court's reasoning for its decision can be neither found nor implied by the circumstances present in the record is less deference due under Bloxom. Given the trial court's reasons for ruling and statements in denying the motion for new trial, I believe that the trial court's findings are explicit, in part, or clearly implied. These determinations were based on findings of credibility, determinations left to the trial court and owed deferential treatment. Therefore, I *693 would affirm the judgment of the trial court.
NOTES
[1] The record shows that Mrs. Leal did not attend the remaining therapy appointments because she was unable to secure transportation.