266 So.2d 462 (1972)
Lucille B. DUFRENE et al.
v.
Martin MILLER et al.
No. 5007.
Court of Appeal of Louisiana, Fourth Circuit.
July 5, 1972.
Rehearings Denied October 4, 1972.
Writs Refused November 16, 1972.
*463 Herbert Garon, Milton E. Brener, New Orleans, for plaintiff-appellant.
Francipane, Regan, Post & St. Pee; Chester Francipane, Metairie, for defendant-appellee Maryland Casualty Company.
Christovich & Kearney, W. K. Christovich, New Orleans, for defendant-appellee Fireman's Insurance Company of Newark, New Jersey.
Porteous, Toledano, Hainkel & Johnson, Christopher E. Lawler, New Orleans, for defendants-appellees Thomas Joseph James and Allstate Insurance Company.
Robert I. Broussard, Gretna, for defendant-appellee Martin Miller.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Ashton R. Hardy, New Orleans, for defendants-appellees Texaco Inc. and the Travelers Ins. Co.
Before CHASEZ, REDMANN, and BAILES, JJ.
BAILES, Judge.
This appeal is from judgment of the trial court rejecting the demands of the plaintiffs for damages, for both property and personal injuries, arising out of a multiple vehicular accident which occurred during heavy fog on the morning of December 19, 1966, on U. S. Highway 90 about a mile and one-half east of Boutte, St. Charles Parish, Louisiana.
The plaintiffs are Mrs. Lucille B. Dufrene and her husband, Mr. Paul Dufrene, Sr., both residents of Lafourche Parish, Louisiana.
The defendants, seven in number, are the following:
1. Martin Miller, an uninsured motorist and a resident of Jefferson Parish.
2. Firemen's Insurance Company, the public liability insurer of Mrs. H. A. Breaux, who was the driver of a vehicle involved in the collision;
3. Texaco, Inc., owner of the vehicle driven by Fred W. Russell;
4. The Travelers Insurance Company, public liability insurer of the vehicle owned by Texaco, Inc., driven by Fred W. Russell;
5. Thomas Joseph James and his public liability insurer, Allstate Insurance Company; and
6. Maryland Casualty Company, the uninsured motorist insurer of Mr. Paul Dufrene, Sr.
The sequence of events leading up to this accident are these: Mr. Paul Defrene, Sr., and his wife left their home in Lafourche Parish to go to a doctor in New Orleans, for an appointed checkup for certain *464 physical ailments, on the early morning of December 19, 1966. When about one and one-half miles east of Boutte, St. Charles Parish, they encountered on U. S. Highway 90 a dense fog or smog, which from the evidence, rendered visibility no farther than the end of the engine hood, or as stated by others, from 8 to 10 feet. Upon running into this fog bank, Mrs. Dufrene, who was driving, reduced her speed appreciably, variously fixed by her from 20 to 25 mph and again at 10 to 15 mph.
At the site of the accident U. S. Highway 90 is a four lane highway, with two lanes going east and two lanes going west, with a median between.
Mrs. Dufrene testified that as she was driving along in her right lane of traffic, their 1965 Chrysler automobile was run into from the rear by an automobile driven by Martin Miller.
Both vehicles immediately stopped. Martin Miller, whose testimony as a whole is so overlaid with contradictions and inconsistencies it has little probative value, testified that he went to the driver's side of the Dufrene vehicle to talk to the driver. When he reached the Dufrene car he found Mrs. Dufrene was the driver and Mr. Dufrene was the passenger. He stated he advised the Dufrenes that he was going to move his car out of the highway to the shoulder. This appears, beyond dispute, to be his action as all witnesses subsequently placed the Miller car on the shoulder of the highway headed east.
The next vehicle on the scene was the one driven by Mrs. H. A. Breaux. She was accompanied by her daughter. Both Mrs. Breaux and her daughter testified unequivocally that their vehicle was stopped about 10 feet from the rear of the Dufrene vehicle. Both testified that Mrs. Breaux did not strike the Dufrene vehicle.
Mrs. Paulette Breaux Lundy, daughter of Mrs. Breaux, testified that she was accompanying her mother to New Orleans the morning of the accident; that her mother was driving from 20 to 30 mph in the heavy fog. In testifying, she refused to fix the distance of visibility, however, she did say she could see the taillights of a car ahead; that her mother saw the taillights and applied her brakes and that she stopped about 10 feet from the rear of the Dufrene vehicle. She stated that upon driving up to the rear of the Dufrene vehicle she saw a car parked on the shoulder of the highway and that as soon as her mother stopped, a negro man (later identified as Martin Miller) told them there had been an accident and to go ahead. Young Mrs. Lundy said she looked to the rear to see if her mother could pull out to go around the Dufrene vehicle; then she saw the headlights of a car coming, whereupon she exclaimed to her mother, "Mother, Oh my God, he's going to hit us." At that moment, Mr. Fred Russell, driving the car owned by Texaco, Inc., and insured by Travelers Insurance Company, struck the rear of the Breaux vehicle propelling it into the rear of the Dufrene automobile.
Mrs. Lundy then testified, that immediate following this impact there was another harder impact which caused their automobile to again strike the Dufrene automobile.
In describing the time lag between the two impacts, Mrs. Lundy stated, "There wasn't time to blink an eye between the two impacts."
The second impact between the Breaux and Texaco vehicles was caused by the rear of the Texaco vehicle being struck by the automobile driven by Thomas Joseph James and insured by Allstate Insurance Company.
Mr. James testified that he was passed by the Texaco Plymouth driven by Mr. Russell and that just as soon as he, Mr. Russell, turned back in front of him, the Texaco car stopped immediately; then the James vehicle struck the Texaco vehicle.
Mr. Fred Russell testified that he saw the taillights of the Breaux car stopped in *465 the road; that he could see about 35 feet ahead, and that he hit the Breaux automobile, "A pretty good little tap."
As the plaintiffs are vigorously contending that they remained in their vehicle and that it was struck three times while they sat in their car, and then struck again after they had alighted from it, it becomes all important to determine when they got out of their car and where they were when their vehicle was struck the second and third time. On this finding of fact depends the determination of whether the Texaco vehicle and the James vehicle inflicted any possible bodily injuries on the plaintiffs. Admittedly, they were no longer in their car at the time they contend it was struck the fourth time.
To preface our finding on this point, it seems appropriate to state that we find from the testimony of Mrs. Breaux and her daughter, Paulette Breaux Lundy, that Mrs. Breaux's vehicle did not strike the Dufrene Chrysler until the Texaco car struck its rear and propelled it into the Dufrene vehicle and that the second impact to the Breaux vehicle caused by James striking the Texaco car followed the first Breaux impact by only a few seconds.
Paulette Breaux Lundy testified that she and her mother got out of their car as soon as it was struck the second time. She stated that when they got out of their car, Mr. and Mrs. Dufrene were on the shoulder of the highway. This was confirmed by Mrs. Breaux.
Being convinced that Mrs. Breaux did not hit the Dufrene automobile when she first stopped behind it, and it having been established by the combined testimony of Mrs. Breaux, Mrs. Lundy, Mr. Fred Russell and corroborated by Mr. James that the first and second impacts to the Breaux vehicle, which were the second and third impacts to the Dufrene vehicle, were in rapid succession, and that Mr. and Mrs. Dufrene were seen on the shoulder of the road at the time of the last impact to the Breaux vehicle, we find by a preponderance of the evidence that Mr. and Mrs. Dufrene were not seated in their automobile at the time of the first or second impact between their car and that of Mrs. Breaux. And, for whatever purpose it may serve, we find no fourth impact occurred.
We are fortified in this finding by the findings of the trial judge which we quote, in part, as follows:
"From the evidence it appears that Martin Miller, Fred Russell and Thomas James all failed to exercise sufficient care and alertness while driving into and in the fog bank they encountered. While there are some suggestions that Mrs. Breaux might have not actually stopped before her vehicle struck that of the Dufrene's, the evidence fails to preponderate in that direction. The testimony of Mrs. Breaux and her daughter, Mrs. Paulette Breaux Lundy, that they succeeded in stopping some ten feet from the Dufrene vehicle stands unrefuted; in fact, Mr. Fred Russell, whose vehicle first struck the Breaux vehicle in the rear, was "fairly sure" Mrs. Breaux was stopped. Tr. p. 509. Besides, he estimated there was a distance of about 6 to 10 feet between the Breaux and Dufrene vehicles. Tr. p. 522."
We find that whatever bodily injuries were inflicted on both plaintiffs of necessity occurred as a result of the first impact. We note that the plaintiffs were occupying, at the time Martin Miller struck them, a heavy type Chrysler sedan. Even though the impact has been described as light, this is a relative term of no probative value. The evidence supports the finding that the impact between the Dufrene and the Miller vehicles was severe enough to spring open the trunk lid. The Dufrenes described it as an explosion. We believe the impact was of sufficient force to cause physical harm to the already crippled back of Mr. Dufrene, and also slightly injured Mrs. Dufrene.
*466 The accident, the resulting bodily injuries to plaintiffs, and a part of the damages to the rear of the Dufrene automobile was caused solely and proximately by the negligence of Martin Miller in driving his car into the rear of the Dufrene vehicle. He failed to maintain a proper lookout and to keep his vehicle under proper control and to drive at a speed commensurate with the weather conditions. The jurisprudence is clear on this requirement.
In Sanders v. Eilers, La.App., 217 So.2d 205 (1968), the court said:
There remains only the charge that defendant Eilers failed to maintain a proper lookout and to keep his vehicle under proper control. The rule is well established that one who operates a motor vehicle on public highways has a never ceasing duty to keep a sharp lookout ahead. A motorist is therefore held to have seen that which in the exercise of ordinary care he should have seen. Rottman v. Beverly, 183 La. 947, 165 So. 153; Jackson v. Cook, 189 La. 860, 181 So. 195. Thus, though as a general rule a motorist may assume that the road ahead is safe for travel, he must when traveling after darkness or in circumstances of limited or impaired visibility observe and so control his vehicle as to avoid discernable objects in his path of travel; that is, in adverse conditions a greater degree of care must be exercised. Watkins v. Strickland Transportation Co. (1956), La.App., 90 So.2d 561, and Hernandez v. State Farm Mutual Automobile Insurance Company (1966), La.App., 192 So.2d 679. This last rule however is subject to the well established exception that a night driver is not charged with the duty of guarding against unusual or unexpected obstructions which he had no reason to anticipate he would encounter on the highway and which under the circumstances are difficult to discover. Gregoire v. Ohio Casualty Ins. Co., La.App., 158 So.2d 379; Gros v. United States Fidelity & Guaranty Co., La.App., 183 So.2d 670."
For the same reasons, Mr. Russell and Mr. James were negligent in the operation of their respective vehicles.
As Mrs. Breaux stopped her vehicle without striking the Dufrene automobile, there is no fault from Mrs. Breaux's action and no liability on the part of Firemen's Insurance Company, her insurer. The defense of contributory negligence on the part of the plaintiffs has been urged by the defendants. We find this defense is good and must be sustained as to whatever property damage was done to the Dufrene automobile by the Texaco vehicle driven by Mr. Russell, and the James vehicle, insured respectively by The Travelers Insurance Co., and Allstate Insurance Company.
The plaintiffs had ample opportunity to remove their automobile from the highway to the shoulder after impacted by Miller, but consciously left their automobile in the highway because "there was a wreck." There is no showing that their vehicle was immobile. Under the provisions of R.S. 32:141, plaintiffs were required to clear the highway. See Ruppert v. Stout, La.App., 231 So.2d 428 (1970), wherein the court stated:
The jurisprudence has consistently held that a driver of a stalled, unlighted vehicle is negligent if he fails to remove the vehicle from the main-traveled portion of the highway as soon as possible in violation of La.R.S. 32:141. * * *."
There is a stipulation that the damages to the Dufrene automobile amounted to $552.30. There is no proof whatever in the record as to what portion of this damage was inflicted in the first impact, or second and third impact. In the absence of such proof, the most equitable division of these damages is to attribute one-third each to the three impacts. Under such a division or apportionment of damages, Martin Miller is liable for one-third of $552.30 or $184.10.
*467 Turning now to a consideration of the physical injuries and resulting damages, the evidence shows that Mrs. Dufrene was mainly no more than shaken up and within three days was asymptomatic and able to go about her customary activities. We believe an award of $250.00 is adequate recompense for her pain and suffering.
At the time of the accident Mr. Dufrene was 64 years of age. From his medical history we learn that since 1923 he has had a back pathology of some type. In 1953, his physical disorder was diagnosed as osteoarthritis and chronic low back pain, and in 1954 he was found to be suffering from what was thought to be a ruptured disc. From 1954 to 1966, the plaintiff was relatively asymptomatic, although he did have back disability from time to time. In 1962 he had stomach surgery at which time two-thirds of his stomach was removed. About one year before the accident, Mr. Dufrene had a stroke and also was found to have insufficient brain circulation.
At the time of the accident Mrs. Dufrene was bringing Mr. Dufrene to his New Orleans physician for a follow-up examination of a condition for which the doctor had seen him initially on December 6, 1966, and again on December 9, 1966. The doctor testified that on December 6, 1966, he found Mr. Dufrene with chest pain, fever, cough, some bloody sputum, back and left knee trouble and a urinary problem. On his December 9, 1966, visit, he was free of discomfort and advised to return on December 19, 1966, because of urinary frequency.
On the day of the accident he was seen by his treating physician within a few hours after the accident. At this time he was complaining of generalized body pain of almost every portion of his back and head. It was recommended that he be hospitalized, however, this was not effected on that date for the lack of available hospital room. Certain medicines were administered and then Mr. Dufrene was sent home for rest. His condition grew progressively worse and he returned to his New Orleans doctor at which time he was hospitalized on December 30, 1966.
On January 3, 1967, Mr. Dufrene was seen by a neurosurgeon who testified that he was complaining of pain in the low back and left leg. The diagnosis was ruptured intervertebral disc at the left lumbosacral interspace. This was confirmed by surgical removal on January 9, 1967.
The record substantiates the following special damages:

Doctor bills $1,162.00
Ambulance 20.00
Hospital bills 1,315.06
Medicines 283.37
 _________
 TOTAL $2,780.43

Mr. Dufrene's physician who saw him previously and also immediately after the accident testified that as Mr. Dufrene "was previously able to carry on his normal occupational activities and was not under direct treatment at that time, it is my assumption that the accident precipitated an acute phase of difficulty which was more marked and which was more marked in terms of leg weakness and pain", and he also testified that, subsequent to the accident he had a new condition, that is, an injury to the thoracic and cervical vertebra.
The neurosurgeon who operated on Mr. Dufrene attributed the necessity for the operation and removal of the ruptured disc on the acute condition brought about by the accident.
It is so well understood in our jurisprudence as to hardly need citation, that a tortfeasor takes his victim as he finds and is responsible for whatever is medically attributed to an inflicted tort. See: Rumby v. Cooperative Cab Company, La. App., 207 So.2d 855 (1968) and Williams v. Reinhart, La.App., 155 So.2d 51 (1963).
*468 On considering the past medical history, the physical condition of plaintiff and all of the medical testimony, we find an award of $7,500.00 for physical pain and suffering and mental pain and anguish is fair and reasonable under the circumstances.
Accordingly, there is judgment herein in favor of Paul Dufrene, Sr., and against Martin Miller for the sum of $10,280.43, together with legal interest thereon from date of judicial demand until paid; and there is judgment herein in favor of Mrs. Lucille B. Dufrene and against Martin Miller in the sum of $250.00, together with legal interest thereon from date of judicial demand until paid.
As Martin Miller was an uninsured motorist herein found to be guilty of negligence proximately causing this accident and the resulting injuries suffered by Paul Dufrene, Sr., and Mrs. Lucille B. Dufrene, the uninsured motorist provisions of the Family Protection Coverage (Part IV) of the policy of public liability insurance issued by Maryland Casualty Company to Paul Dufrene, Sr., is operative and effective to the maximum extent of $5,000.00 liability to each person covered thereunto suffering bodily injuries in this accident. Therefore Maryland Casualty Company is cast in judgment, in solido, with Martin Miller, in favor of Paul Dufrene, Sr., to the extent and in the amount of $5,000.00, and in favor of Mrs. Lucille B. Dufrene in the amount of $250.00, together with legal interest thereon from date of judicial demand until paid, and for all costs of court, including both the trial court and in this court.
Maryland Casualty Company has filed third party petition against Martin Miller to recover judgment against him for any amount which Maryland Casualty Company is obliged to pay under the said uninsured motorist provisions of the Dufrene policy, above referred to, therefore, for that reason, there is judgment herein in favor of Maryland Casualty Company and against Martin Miller in the full sum of $5,250.00, together with legal interest thereon from date of judicial demand until paid, and for all costs of court, both in trial court and in this court.
Reversed in part; affirmed in part; and rendered.