Clarence V. JOHNSTON

v.

The FORD MOTOR COMPANY et al.

Civ. A. No. 76452.

United States District Court,
W. D. Louisiana,
Lake Charles Division.

Jan. 24, 1978.

Howard N. Nugent, Jr., Alexandria, La., for plaintiff.

Edmund E. Woodley, Lake Charles, La., Woodley and Fenet, Lake Charles, La., for defendant.

Henry B. Bruser, III, Alexandria, La., Gold, Little, Simon, Weems & Bruser, Alexandria, La., for intervenor.

VERON, District Judge.

## OPINION

Clarence V. Johnston, a resident of Vernon Parish, Louisiana, filed this suit against defendants, Ford Motor Company, a Delaware Corporation and Auto Specialties Manufacturing Company, a Missouri Corporation with its principal place of business in St. Joseph, Michigan, for injuries he allegedly received on May 2, 1975, when a vehicle jack failed. Montgomery Ward and Company, Incorporated, an Illinois corporation with its principal place of business in Chicago, Illinois, the employer of plaintiff, intervened for the amount of compensation and medical expenses it paid on behalf of the plaintiff. Plaintiff then filed a claim against Montgomery Ward for workmen's compensation benefits, penalties and attorney's fees under Louisiana Workmen's Compensation Statute, LSA–R.S. 23:1021, et seq.

Jurisdiction of the court, pursuant to 28 U.S.C.A. § 1332, is based upon diversity of citizenship and a claim in excess of $10,000.

Plaintiff was employed by Montgomery Ward as a lawn mower mechanic but was also required to help with deliveries. On the morning of May 2, 1975, Johnston approached the Montgomery Ward truck in anticipation of leaving for work. As he approached the truck he noticed a flat tire on the left rear wheel. He jacked up the truck, removed the flat tire and prepared to put on the spare tire. While in a squatting position, with the spare tire in his hands but not yet touching the wheel posts, he heard a loud metallic noise and saw the truck coming down. Plaintiff states that he turned and threw the tire in his hands clear of the truck. Plaintiff claims that he injured his

back in the process of throwing the tire. He was not struck by the truck but was shaken up. A few minutes later plaintiff, with the help of a stranger and the use of the stranger's jack, was able to raise the truck and install the spare tire.

Mr. Johnston stated that when he looked under the pickup truck after it had fallen off the jack, the jack was in two pieces. The base plate had separated from the housing of the jack. He picked up the two parts of the jack and placed them in the company's pickup. When he arrived at work, he reported the jack incident to his superior. Later on that day, he was taken to a doctor by an employee of Montgomery Ward.

As a result of the alleged injury, plaintiff was paid workmen's compensation benefits in the sum of $4,292 and medical benefits were paid on his behalf in the sum of $10,-493.37.

■ The law of Louisiana in reference to the liability of a manufacturer of a product is clearly stated in the case of *Weber v. Fidelity & Casualty Insurance Company of New York*, 259 La. 599, 250 So.2d 754, 755 (1971). The Court stated:

"A manufacturer of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part, sustains an injury caused by a defect in the design, composition, or manufacture of the article, if the injury might reasonably have been anticipated. However, the plaintiff claiming injury has the burden of proving that the product was defective, i. e., unreasonably dangerous to normal use, and that the plaintiff's injuries were caused by reason of the defect."

The jack in question was manufactured by Auto Specialties Manufacturing Company for Ford Motor Company to be installed in new Ford F–250 pickup trucks.

■ The question of liability insofar as Ford Motor Company and Auto Specialties Manufacturing Company are concerned is whether the jack was defective and, if de-

fective, whether the defective jack was the proximate cause of the accident.

Two experts testified concerning the question of the jack causing the accident. Dr. Mendy Sabbaghian, a professor of engineering at Louisiana State University testified on behalf of the plaintiff and Richard S. Graafsma, chief engineer for the jack division of Auto Specialties for some twenty-nine years, testified on behalf of the defendants.

Mr. Graafsma testified that they had attempted to build jacks with the identical defect that was found in the jack which is the subject of this lawsuit and that they had been unable to do so. It was Mr. Graafsma's opinion that the jack could not have failed without the occurrence of some outside force.

Dr. Sabbaghian testified that he had examined the jack in question, went to the place where the jack was used and examined the base of the jack that failed. He also examined a similar jack without a defect in order to arrive at an opinion.

Both experts admitted that the jack was defective because the pins which hold the base of the jack to the housing were too short and could not be spread when attached at the factory.

Dr. Sabbaghian demonstrated to the court that when the jack is raised and the base plate comes loose, the jack would revolve on the middle point and become less stable. He was of the opinion that when the base plate became unstable, the jack failed.

No evidence was presented that indicated the jack was not properly used or was not used in a normal manner.

The court finds that the jack was defective and that the defective condition caused the jack to fail and the pickup truck to fall.

Defendants argue that even if the accident itself was caused by a defective jack, plaintiff's back problems were the result of prior accidents and were therefore already in existence at the time of the events sued on. Prior to this most recent injury plaintiff had suffered nine separate severe injuries (many of them to his back) between 1955 and 1973. Four of these are of particular interest:

1. 1955: Plaintiff injured his back while handling a log. Dr. Kirgis' report of July 6, 1969, states that plaintiff told him that he "always had some degree of trouble with the back" following that accident.

2. 1963: Plaintiff injured his low back and was subsequently operated on for herniated fat pads.

3. 1968: Plaintiff injured his back as the result of a slip and fall. A laminectomy was performed on September 17, 1968.

4. 1969: Plaintiff reinjured his back in a rear end automobile collision.

Plaintiff asks this court to accept the assertion that his back was virtually normal prior to the accident in 1975, and that his current disc problems were caused solely by that mishap. In support of his contention plaintiff cites Dr. Levy's statement that the accident was the precipitating cause of plaintiff's disc problems (deposition p. 31). Defendants dispute plaintiff's contention on two grounds. First, Dr. Levy was only vaguely aware of plaintiff's prior history of back injuries and therefore based his "precipitating cause" statement on his belief that plaintiff had not previously suffered any trauma severe enough to have brought on the evident symptoms. Had he known of plaintiff's medical history Dr. Levy might well have been less certain that the 1975 accident was the precipitating cause. Second, and even more convincing, is the fact that both Dr. Homer Kirgis (on July 8, 1969) and Dr. J. L. Henderson (on April 30, 1969) had diagnosed a ruptured disc in plaintiff's back *subsequent* to his laminectomy of 1968. Indeed, Dr. Henderson recommended surgery to correct the newly discovered disc problem, but that surgery was never performed. The record also reflects that plaintiff settled the 1969 automobile rear-end collision claim on a basis of an alleged disc problem resulting from the accident. Even Dr. Levy stated that plaintiff's previous accidents might well have

had some part in producing plaintiff's current disc problems (deposition p. 19). The rule in such a situation is clear:

"Where the facts proven show that there are several probable causes of an injury, for one or more of which the defendant was not responsible and it is just as reasonable and probable that the injury was the result of one cause or the other, plaintiff cannot have a recovery, since he has failed to prove that the negligence of the defendant caused the injury." *Dreijer v. Girod Motor Co.*, 294 F.2d 549, 556 (5th Cir. 1961) (Quoting *Ingersoll v. Liberty Bank of Buffalo*, 278 N.Y. 1, 14 N.E.2d 828, note 4 (1938).

We therefore hold that plaintiff's current condition is not solely the result of this most recent accident. Rather, his disc problems may have existed as early as 1969.

■ Whether or not the plaintiff's back was completely normal prior to 1975, it is obvious that the accident did have a very serious negative impact on him. Plaintiff was able to work prior to his injury and is now, by all accounts, disabled until surgery is performed. The tort law is well settled that a tort-feasor takes his victim as he finds him, and is liable for the full extent of the damages he has inflicted. *Tabor v. Miller*, 389 F.2d 645 (3rd Cir. 1968). Thus, it is clear that even though plaintiff's back may have been weak or injured prior to the accident, it was the events sued upon that resulted in his current disability. Defendants must therefore bear the liability for these disabling events.

■ The evidence indicates that the plaintiff might not have continued to work even if the accident had not occurred. This is pure conjecture, however. The fact is that he was working. We must therefore base an estimate of his lost wages on the assumption that he would have continued to earn wages at his pre-accident rate. Also, it appears that it would take nearly a year after surgery which he has agreed to undergo, for plaintiff to recover, as nearly as possible, to his pre-accident condition. Plaintiff has therefore suffered a loss of wages for a period of three and one-half years. The record reflects that plaintiff filed no income tax returns for the years 1972, 1973, 1974 and 1975 for the reason that he did not make enough money. Plaintiff was earning $2.50 per hour for a 40-hour week when he was injured and certainly there is nothing to indicate that he would earn more than that sum. Thus, the plaintiff was earning an average of $100 per week and based on the record which indicates that the total disability, including the period of time of surgery and recuperation, would be approximately 3½ years or a total of 182 weeks, the court will award loss of wages in the sum of $18,200. Plaintiff has suffered in the past and will continue to suffer in the future until his surgery corrects his back condition and for that period of time the court feels that a fair amount of compensation for pain and suffering would be the sum of $20,000.

■ It is also clear that plaintiff's back will never again be completely normal. As we have already indicated, however, part of the permanent loss of function is the result of plaintiff's prior injuries and surgery, and is not to be compensated for by defendants in this action. Nevertheless, plaintiff will have additional loss of bodily function as the result of the latest accident and for this loss of bodily function the court believes it should award him the sum of $10,000. Finally, Ford and Auto Specialties have stipulated with the plaintiff that should defendants be found to be liable to plaintiff for the accident itself, the medical expenses incurred immediately following the accident and up to the time of trial as a direct result of the accident totaled $10,493.37. In addition, the evidence indicates that the cost of the surgery to correct plaintiff's back is estimated to be $3,000. The amount to be awarded to plaintiff in this matter for medical expenses is $13,493.37. The total amount awarded to plaintiff is the sum of $61,693.37.

■ The next question to be determined by the court is whether plaintiff is entitled to workmen's compensation benefits from Montgomery Ward and, if so, to what extent. The testimony clearly estab-

lishes that plaintiff is totally disabled and has been disabled since the date of this accident and will not recover until approximately one year after he undergoes surgery. Where a claimant is found totally disabled at the time of trial and the evidence is inconclusive as to when he may recover, compensation should be awarded for the maximum number of weeks prescribed for permanent disability. *Reason v. Joan of Arc Co.*, La.App., 285 So.2d 332 (1973); *Levine v. Liberty Mutual Insurance Co.*, La.App., 305 So.2d 665 (1974).

██ Plaintiff also claims that Montgomery Ward was arbitrary and capricious in terminating his compensation on August 7, 1976. Montgomery Ward terminated compensation benefits on the basis of medical reports by Dr. P. M. Davis, Jr. and Dr. John D. Jackson that Mr. Johnston could return to his prior employment.

The evidence in this case clearly indicates that a serious factual issue was presented as to the plaintiff's disability. A number of doctors treated or examined plaintiff. At the time of the termination of the compensation payments, Montgomery Ward had information from one of the treating physicians and one of the examining physicians that Mr. Johnston could return to his prior employment.

LSA–R.S. 23:1201.2 provides that where an employer or its insurer fails to pay workmen's compensation benefits within 60 days after demand, the employer or its insurer shall be liable for penalties and attorney's fees where such failure to pay is found to be "arbitrary, capricious or without probable cause  .  .  ." The jurisprudence has also construed this statute to provide that penalties and attorney's fees shall be assessed against an employer or its insurer where compensation benefits are terminated without probable cause.

In interpretation of LSA–R.S. 23:1201.2, the court has held that when the termination of workmen's compensation benefits is based on competent medical evidence, the action is not arbitrary, capricious and without probable cause. *Levine v. Liberty Mutual Insurance Company*, supra.

The evidence sustains Montgomery Ward's position since there was competent medical testimony that Mr. Johnston could return to his prior employment. The claim for penalties and attorney's fees is denied.

The maximum rate of workmen's compensation benefits for injuries occurring at the time of plaintiff's accident, was $65.00 per week during the period of disability, not to exceed 500 weeks, together with all necessary medical expenses up to $25,000. LSA–R.S. 23:1201 et seq.

The court awards plaintiff workmen's compensation benefits at the rate of $65.00 per week, commencing May 2, 1975, not to exceed 500 weeks, plus all medical expenses incurred or that which may be incurred, not to exceed $25,000. Montgomery Ward is entitled to credit for all compensation payments previously paid.

██ Louisiana law provides that on recovery of damages from a third party by an employee, the employer is entitled to reimbursement for the total amount paid in compensation and medical expenses. LSA–R.S. 23:1101, 1103. It was stipulated that plaintiff was paid workmen's compensation benefits in the sum of $4,292 and medical benefits were paid on his behalf in the sum of $10,493.37. Montgomery Ward is entitled to reimbursement for the total amount paid in compensation and medical payments. *Burley v. Louisiana Power and Light Co.*, La.App., 327 So.2d 585 (1976). Further, since the amount awarded to plaintiff against the tort-feasor exceeds the maximum amount which the employer would be obligated to pay to the plaintiff in compensation benefits, the award of future benefits is now moot and Montgomery Ward is relieved of any future liability in workmen's compensation benefits to Mr. Johnston.

For the foregoing reasons, judgment is rendered in favor of Clarence V. Johnston and against Ford Motor Company and Auto Specialties Manufacturing Company, jointly in the full sum of $61,693.37, together with legal interest from date of judgment. Judgment is further rendered in favor of

Montgomery Ward that it be paid in preference and priority the sum of $14,785.37 out of the judgment awarded to Clarence V. Johnston. Defendants/Ford Motor Company and Auto Specialties Manufacturing Company shall pay all costs of these proceedings. Counsel for Clarence V. Johnston shall submit a formal judgment within ten (10) days.