692 So.2d 739 (1997)
Raymond DAUZAT, et al., Plaintiff-Appellant-Appellee,
v.
CANAL INSURANCE COMPANY, et al., Defendant-Appellee-Appellant.
No. 96-1261.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1997.
Rehearing Denied May 13, 1997.
*740 Chris J. Roy, Jr., Alexandria, for Raymond Dauzat, et al.
Patrick J. Briney, M. Candice Hattan, Lafayette, for Canal Insurance Company, et al.
Sheila Moore Gordon, Baton Rouge, for State of Louisiana.
Before YELVERTON, THIBODEAUX and SAUNDERS, JJ.
*741 SAUNDERS, Judge.
Both parties appeal the trial court's quantum awards, which were rendered in accordance with a jury's findings. Additionally, plaintiff complains procedurally of the trial court's alleged refusal to allow proper cross-examination of Dr. James McDaniel and, substantively, of the trial court's failure to instruct the jury as he would have liked with respect to reimbursement of certain medical expenses.
After reviewing the record evidence, we conclude that the jury awarded plaintiff damages for cervical injuries which it related to this accident, but not for plaintiff's other ailments, and amend the award for plaintiff's general damages related to plaintiff's cervical fusion to $100,000.00, the minimum award that is reasonable under the particular circumstances of this case.

FACTS
The facts are essentially uncontradicted. This lawsuit arises from an automobile accident which occurred on December 11, 1992, at approximately 2:00 p.m. on the southeast Evangeline Thruway in Lafayette, Louisiana. A truck driven by defendant, Arthur Anderson, an employee of A & A Trucking and insured by Canal Insurance Company, changed lanes from left to right, and struck plaintiff's vehicle, which then slid into the median of the Thruway. At the time of the accident, plaintiff was returning to his home in Hessmer in Avoyelles Parish from a trip to south Louisiana, where he had taken his son, Troy, for a job interview.
Defendants' liability is uncontested. What is at issue is quantum. Between the date of the accident and the trial held November 7, 1995, plaintiff incurred medical expenses totaling $216,322.54 for physical medical treatments, including surgeries for disc herniations in his cervical and lumbar spine, and for inpatient and outpatient psychiatric medical treatment. After the parties were unable to settle this matter amicably, it was tried to a jury, which awarded the following damages:

Physical pain and suffering, past and future $25,000.00
Mental pain and suffering, past and future $10,000.00
Past medical expenses $63,472.82
Future medical expenses $30,000.00
Past lost wages $35,000.00
Future lost wages $42,000.00

From a judgment rendered in accordance with these findings, both parties have appealed.
Plaintiff assigns as error alleged abuses of discretion in his awards for general damages, past medicals and lost future income. Part of plaintiff's argument for past medicals is that "the trial court legally erred in failing to charge the jury on the legal principle that all medical treatment is compensable unless it is incurred in bad faith by the plaintiff." Finally, plaintiff complains that the trial court procedurally erred in refusing to allow him to more thoroughly cross-examine Dr. James McDaniel.
Defendants also appeal certain aspects of the judgment. Specifically, they complain that the jury's award of past lost wages of $35,000.00 was excessive "because Mr. Dauzat was unemployed and retired at the time of the accident and further presented no evidence to substantiate his lost wage claim." Defendants also complain of the $42,000.00 award for future lost wages, arguing that plaintiff "did not present evidence to substantiate his claim that he intended to re-enter the labor force at anytime in the future and further presented no evidence of lost earning capacity."

OPINION
Our standard of review on the issue of damages was clearly set forth by our supreme court in Youn v. Maritime Overseas Corporation, 623 So.2d 1257 (La.1993) at 1260-61, cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), where the court explained:
In Reck v. Stevens, 373 So.2d 498 (La.1979), this Court commented on appellate review of general damage awards and on the "much discretion" in fixing damages accorded to trial courts by La. Civ.Code art.1934(3) (1870). The decision pointed out that the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award *742 should be determined by the facts or circumstances particular to the case under consideration.
In Reck, this court disapproved the appellate court's simply reviewing the medical evidence and then concluding that the award for those injuries was excessive, without taking into consideration the particular effect of the particular injuries on the particular plaintiff. This court further disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La. 1974); Spillers v. Montgomery Ward & Co., 294 So.2d 803 (La.1974).
Callihan v. Town of Vinton, 95-665, p. 5-6 (La.App. 3 Cir. 12/6/95); 668 So.2d 735, 740.
Having set forth the standard of appellate review applicable in this case, we address separately each of the assigned errors raised by the parties.
Medical Expenses
A plaintiff ordinarily may recover from the tortfeasor reasonable medical expenses, past and future, which he incurs as a result of an injury. White v. Longanecker, 93-1122 (La.App. 1 Cir.5/23/94); 637 So.2d 1213, 1218, writ denied, 94-1704 (La.10/7/94); 644 So.2d 640. When incurred in good faith, the victim is entitled to recover the full amount of medical expenses incurred as a result of the accident. Andres v. Liberty Mut. Ins. Co., 568 So.2d 651 (La.App. 3 Cir.1990).
Rowe v. State Farm Mut. Auto. Ins. Co., 95-669, p. 19 (La.App. 3 Cir. 3/6/96); 670 So.2d 718, 729, writ denied, 96-0824 (La.5/17/96); 673 So.2d 611.
In this case, plaintiff complains that the jury's award of $63,472.82 for past medical expenses constituted a clear abuse of its discretion. At trial, the parties stipulated that Dauzat had incurred medical bills of $216,322.54 following the accident, and plaintiff now complains that the jury's failure to award $152,849.72 more constituted an abuse of its discretion, incorrectly premised upon the jury's finding "that Dauzat had failed to mitigate his damages or had undergone unnecessary treatment." Because the jury failed to award damages of an amount sufficient to reimburse him for all of the medical expenses ("with the possible exception of the surgery he had for his L5-S1 disc problem that pre-existed this accident") he argues that we should increase the award, no matter whether it was his expenses related to cervical injuries, lumbar injuries, or to his psychological treatments which the jury declined to award.
Defendants dispute plaintiff's view of the inferences to be drawn from the jury's findings. According to defendants, the jury properly denied plaintiff 100% reimbursement of his medical bills, and did so only after properly concluding that a significant portion of plaintiff's alleged medical conditions were neither related to the accident nor caused by it, notwithstanding his best efforts to characterize them differently. According to defendants, the medical evidence introduced at trial by both parties established that plaintiff's back and neck conditions were developmental, predated the present accident, and were neither caused by nor significantly aggravated by it. As to the L5-S1 disc, defendants remind us that Dr. McClellan testified that the herniation there "was the same herniation that preexisted the present accident and that was previously diagnosed *743 by Dr. Drerup in 1989." Moreover, Dr. McClellan additionally testified that the herniated disc at L4-5 was degenerative and not caused by the present accident, the same conclusion offered by defendants' retained expert, Dr. James McDaniel.
In fact, according to defendants, what the jury might have elicited from the expert testimony is that "a medical consensus exists that Raymond Dauzat had an extraordinary spine." According to them, "Dauzat's case is unusual in that he has an extraordinary amount of degenerative disc disease throughout the complete length of the spine," a finding "confirmed by plaintiff's treating orthopedic surgeon, Dr. John Cobb, who confirmed that Dauzat had developmental degeneration throughout his spine, all of which predates the present accident." Specifically, in defendants' view "Dr. Cobb's test revealed that Dauzat had decreased disc spaces at all lumbar and lower thoracic vertebral levels and had bulging discs at all thoracic levels," a condition which "was developmental and not caused by the present accident." Additionally, defendants maintained that Dr. Jerry Smith, "another of plaintiff's treating doctors, also stated that his MRIs revealed, regarding Dauzat's lumbar and cervical spine, the opinion that `he had some disc disease, and that he had some degenerative changes or some arthritic changes,'" changes suggested by Dr. Smith to "occur over a lifetime" and which were in no way related to the present accident.
In view of all of this evidence, defendants suggest that the jury's award reimbursing some but not all of plaintiff's medical expenses was not manifestly erroneous and should be affirmed, given its great discretion in rejecting or accepting any or a part of witness' testimony. See Welch v. Winn-Dixie Louisiana, Inc., 94-2331 (La.5/22/95); 655 So.2d 309, citing inter alia, LaHaye v. Allstate Ins. Co., 570 So.2d 460 (La.App. 3 Cir.), writ denied, 575 So.2d 391 (La.1991).
Defendants further suggest that plaintiff lacked the credibility to withstand the weight of the medical testimony offered against his case. Specifically, defendants suggest "that running throughout the evidence in this case is an extraordinary number of manipulations, lies, half truths, and concealments attributable solely to the plaintiff, Raymond Dauzat, which clearly show the jury that Dauzat was completely untrustworthy and manipulative." According to defendants, Dr. Rivet, plaintiff's own treating neurosurgeon, testified that the conditions in Dauzat's cervical spine at C5-6 and C6-7 were, based on his diagnostic testing of plaintiff's cervical spine shortly after the accident, developmental conditions which predated the accident, and the only way that he "could correlate plaintiff's injuries or any claimed aggravation of plaintiff's injuries to any specific event, was to receive a history from Dauzat, [a] process which required the assessment of Dauzat's credibility."

RELATED EXPENSES

Cervical Injuries
In part, by process of deduction, we are comfortable in concluding from the record that the jury concluded that plaintiff's cervical injuries were caused by the accident, while the others were not. As we have observed, the parties stipulated that plaintiff's total medicals equaled $216,322.54, against which the jury awarded unapportioned past medicals of $63,472.82. We (and presumably the jury) have had an opportunity to sift through the thirty-two volumes of mostly medical evidence. The $216,322.54 stipulated total damages can be divided roughly as follows: psychiatric, approximately $133,500.00; lumbar and lumbosacral, approximately $21,500.00; with cervical, approximately $61,322.54.
Because plaintiff's medical bills related to his cervical injuriesand only the expenses related to that injuryare virtually identical to the jury's award, and because it was only plaintiff's cervical injuries that clearly did not predate this most recent accident involving plaintiff, we are comfortable in our finding and that of the jury. As plaintiff noted, both treating physicians Gerry Smith, an Alexandria physical rehabilitation doctor, and Dr. Robert Rivet, a Lafayette neurosurgeon, definitely related plaintiff's cervical injuries to the accident, and the "only contradictory testimony was that of Dr. McDaniel whose testimony should be given no weight since he *744 examined Dauzat solely for litigation purposes and after the cervical surgeries and neurectomies had been performed."
From the evidence presented and the jury's awards, we conclude that the jury attributed plaintiff's cervical injuries to the accident in question and that its findings, consistent with the laws of this state, were not clearly wrong. Specifically, we note that while it is almost certain that plaintiff, being older than fifty years of age, had typical degenerative arthritis or spondylosis in the cervical spine, he had no significant history of cervical troubles prior to the accident at issue here. Moreover, even after noting some of plaintiff's rather unique symptoms, Dr. Rivet directly attributed the need for surgery on plaintiff's cervical spine to the accident at issue, explicitly noting that these injuries were not "congenital" but instead were "developmental."
Plaintiff has the burden of proving causation by a preponderance of the evidence. Morris v. Orleans Parish School Bd., 553 So.2d 427 (La.1989). The plaintiff is aided in discharging this burden by the legal presumption that, "if before the accident the injured was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition." Lucas v. Insurance Company of North America, 342 So.2d 591, 596 (La.1977) (emphasis ours), quoted in Dabog v. Deris, 625 So.2d 492, 494 (La. 1993) and Housley v. Cerise, 579 So.2d 973, 980 (La.1991).
Rowe v. State Farm, at p. 3; 670 So.2d at 721.
In the present case, we conclude that plaintiff has successfully established that all of his cervical expenses are accident-related, and that the jury properly so held.

OTHER EXPENSES
By the same token, for the reasons which follow, we conclude that the jury concluded that plaintiff failed to prove that his psychiatric and lumbar-sacral injuries (aside for a passing soft tissue element) were caused by this accident, and find no manifest error in this finding of fact.

Lumbar Injuries
Plaintiff suggests that "it was clear from the testimony of all of the doctors except Dr. McDaniel" that plaintiff's lumbar injuries were accident related. While plaintiff concedes that Alexandria neurosurgeon, Dr. Lawrence Drerup, had recommended surgery for plaintiff's lower back injuries following an unrelated accident in 1989, he maintains that the medical "testimony of Dr. Russel McClellan, an LSU Medical Center radiologist, clearly demonstrated that Dauzat had increased lumbar problems on MRI after the 1992 accident, as compared to the CT reports of Dr. Drerup in 1989." Plaintiff maintains that "Dr. McClellan opined that there were changes in the January 1993 diagnostic studies of Dauzat versus the August 1994 studies that showed a progression of his stenosis that he attributed to the trauma of the automobile accident," and that at a minimum, he is entitled to compensation for medicals arising from this progression, particularly since "Dr. [Kalia K. Sadasivan], Dauzat's low back lumbar surgeon at LSU Medical Center in Shreveport, also opined that Dauzat's lumbar problems were now worse than those reported by Dr. Drerup after the 1989 accident." According to plaintiff, Dr. Sadasivan "further stated that it was more than likely that the 1992 automobile accident had aggravated or exacerbated Dauzat's underlining degenerative disc disease, and was the cause of Dauzat's extreme lumbar pain."
On the other hand, defendants suggest that the jury was not clearly wrong in rejecting plaintiff's assertion that the accident caused Dauzat's lumbar injuries, pointing out plaintiff's similar lack of truthfulness with Dr. Cobb, who treated plaintiff's lumbar spine. We quote from defendants' brief:
When asked by plaintiff's counsel whether Dauzat's bulging disc at L4-5 was related to the present accident, Dr. Cobb testified that he could relate it to the accident only if we assume that Dauzat had no symptoms prior to the accident. However, the *745 jury also learned that when Dr. Cobb was attempting to establish the proper history of Dauzat's bulging discs at L4-5 and L5-S1, Dauzat lied to Dr. Cobb regarding his previous conditions. On Dr. Cobb's intake sheet, filled out by Dauzat on his first visit, Dauzat, on two occasions, denied that he had ever suffered any previous injury to his back of any kind. On Dr. Cobb's intake sheet, Dauzat responded to these questions as follows, "any past similar problems or injuries? None." "Were you ever injured in any way before this injury? No." However, Dr. Cobb later learned through other sources that Dauzat was diagnosed with a herniated disc at L5-S1 by Dr. Lawrence Drerup, an orthopedic surgeon, following [an] incident in 1989 where Dauzat injured himself lifting a commode. Furthermore, Dr. Cobb was not told that Dr. Drerup had recommended surgery and that Dauzat had elected not to have the surgery. (References to transcript omitted.)
Defendants argue that after hearing the evidence, the jury could well have taken the position that plaintiff was simply incredible.
We have reviewed the evidence and, under the circumstances, find merit in this position. Specifically, we hold that the jury did not manifestly err in finding that plaintiff's mental injuries were wholly caused by traumatic events or personality disorders unrelated to the accident at issue here. Likewise, we can detect no error in its finding that plaintiff failed to establish a causal link between the accident in question and his eventual lumbar disc operation, for plaintiff's treating physician, Dr. Drerup, clearly had wanted to perform the operation as far back as 1989, long before the accident at issue in this proceeding.
In Louisiana tort cases and other ordinary civil actions, the plaintiff, in general, has the burden of proving every essential element of his case, including the cause-in-fact of damage, by a preponderance of the evidence, not by some artificially created greater standard. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971); See Prosser, Torts, Sec. 41, p. 269 (5th ed.1984); 2 McCormick, Evidence, Sec. 339 (4th ed.1992); 9 Wigmore, Evidence, Secs. 2497, 2498 (3d ed.1940). Proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not. Jordan v. Travelers Insurance Company, 245 So.2d at 155; See Town of Slidell v. Temple, 246 La. 137, 164 So.2d 276 (1964); Naquin v. Marquette Casualty Co., 244 La. 569, 153 So.2d 395 (1963); Perkins v. Texas & New Orleans Railroad Co., 243 La. 829, 147 So.2d 646 (1962). See also: Sanders, The Anatomy of Proof in Civil Actions, 28 La.L.Rev. 297 (1968); James, Civil Procedure, Section 7.6 at pp. 250-51 (1965); Prosser on Torts, Section 41 at pp. 245-46 (3d ed., 1964); McCormick on Evidence, Section 319 at pp. 676-77 (1954); Malone, Louisiana Workmen's Compensation, Section 252 at pp. 293-294 (1951).
....
The defendant's liability for damages is not mitigated by the fact that the plaintiff's pre-existing physical infirmity was responsible in part for the consequences of the plaintiff's injury by the defendant. It is clear that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. Perniciaro v. Brinch, 384 So.2d 392, 395 (La.1980); Sansonni v. Jefferson Parish School Board, 344 So.2d 42 (La.App. 4th Cir.1977); Deville v. United States Fidelity & Guaranty Company, 258 So.2d 694 (La.App. 3d Cir.1972); Dufrene v. Miller, 266 So.2d 462 (La.App. 4th Cir.1972); Rachal v. Bankers and Shippers Insurance Company, 146 So.2d 426 (La.App. 3d Cir.1962); see also Johnston v. Ford Motor Co., 443 F.Supp. 870 (E.D.La.1978). The defendant is liable for the harm it causes even though under the same circumstances a normal person would not have suffered that illness or injury. When the defendant's tortious conduct aggravates a pre-existing condition, the defendant must compensate the victim for the full extent of the aggravation. American Motorist v. American Rent-All, 579 So.2d 429 (La.1991); Walton v. William Wolf Baking Company, Inc., 406 So.2d 168 *746 (La.1981); Perniciaro v. Brinch, 384 So.2d 392 (La.1980); Reck v. Stevens, 373 So.2d 498 (La.1979).
Lasha v. Olin Corp., 625 So.2d 1002, 1005-1006 (La.1993).
Nonetheless:
In situations involving multiple accidents, whether preceding or subsequent to the accident at issue, a tortfeasor is liable only for the direct and proximate results of his wrongful acts, including aggravation of any preexisting legal defects or injuries. Although a tortfeasor takes his victim as he finds him, the tortfeasor cannot be held liable for injuries which are not attributable to the wrongful act. Giesler v. United States Fidelity and Guar., 498 So.2d 292 (La.App. 4th Cir.1986); Williams v. Winn Dixie Louisiana, Inc., 418 So.2d 13 (La. App. 1st Cir.1982). In such situations, plaintiff is required to prove a causal connection between the damages claimed and the accident by a reasonable preponderance of the evidence. Giesler, 498 So.2d at 294.
Sanders v. Collins, 551 So.2d 644, 651 (La. App. 1 Cir.), writ denied, 556 So.2d 1261 (La.1990).
In this case, we conclude from its verdict and the evidence that the jury concluded that plaintiff failed to make his case for causation as to his lumbar-sacral and psychological damages, and we find no manifest error. While it is true, as plaintiff suggests, that orthopedist Dr. John Cobb initially was of the opinion that claimant's bulging discs at L4-5 and L5-S1 were attributable to this accident, his opinion was premised upon plaintiff possessing no such symptoms before the accident. As we have already had occasion to observe, plaintiff had already had similar symptoms, yet failed to report Dr. Drerup's 1989 impressions. Accordingly, we affirm the judgment of the trial court as to past medicals, and find no abuse of the jury's much discretion in declining to award general damages for plaintiff's rather significant psychological and lower back injuries.

General Damages Award
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is "great,"and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. (Footnotes omitted.)
Callihan, 95-665, p. 6; 668 So.2d at 740.[1]
Stated differently:
Our role as an appellate court in reviewing general damages is not to decide what we consider to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. "Each case is different, and the adequacy or inadequacy of the award should be determined by the *747 facts or circumstances particular to the case under consideration." Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
Marceaux v. Gibbs, 95-1397, p. 8 (La.App. 3 Cir. 8/14/96); 680 So.2d 1189, 1193-94.
Plaintiff maintains that the jury's general damages awards of $25,000.00 for past and future physical pain and suffering, and $10,000.00 for past and future mental pain and suffering, are abusively low. Under the circumstances, we are compelled to agree, for the record shows without contradiction that plaintiff had to undergo a two-level cervical fusion necessitated solely by negligent acts for which defendants are liable. Moreover, the record shows that plaintiff's cervical injuries contributed in large measure to his listlessness. Consequently, we believe that the lowest reasonable award for plaintiff's physical and mental anguish, past and future, is $100,000.00, bearing in large measure to his underlying physical and mental state.

Unrelated Medical Expenses
Plaintiff's fourth assigned error complains that "the trial court erred in failing to charge the jury on the legal principle that all medical treatment is compensable unless it is incurred in bad faith by the plaintiff," an argument which we must address only in connection with those medical expenses that we have declined to award on alternate grounds. To the extent that plaintiff suggest that defendants must bear the cost of any expenses for medical expenses not demonstrated to have been connected causally to the accident, plaintiff misconstrues the law, for before the presumption alluded to attaches, it is incumbent upon the fact finder to determine that the injuries sought to be treated were caused by the tortfeasor's conduct. As we have already had occasion to observe:
A plaintiff ordinarily may recover from the tortfeasor reasonable medical expenses, past and future, which he incurs as a result of an injury. White v. Longanecker, 93-1122 (La.App. 1 Cir.5/23/94); 637 So.2d 1213, 1218, writ denied, 94-1704 (La.10/7/94); 644 So.2d 640. When incurred in good faith, the victim is entitled to recover the full amount of medical expenses incurred as a result of the accident. Andres v. Liberty Mut. Ins. Co., 568 So.2d 651 (La.App. 3 Cir.1990).
Rowe, at p. 19; 670 So.2d at 729 (cite omitted)(emphasis ours).
True, excessive medical charges or treatments that are causally related to the tortfeasor's conduct and not to a litigant's fraud are assessed to the tortfeasor for the reasons explained by Judge Redmann in Hillebrandt v. Holsum Bakeries, Inc., 267 So.2d 608, 610 (La.App. 4 Cir.1972)(on rehearing):
In the absence of fault on the part of the patient in accepting the treatment, the fault which causes the patient's predicament is not that of the doctor alone, but that of doctor and tortfeasor. And it is foreseeable to the tortfeasor that the tort may place the victim in the hands of an overcharging or overtreating physician, since such physicians are not so unheard of as to make it unreasonably unlikely that overcharge or overtreatment of a tort victim may occur.
In our opinion the blameless tort victim should not bear the expense of litigating with his doctor and should certainly not bear the risk of having to pay tort-caused charges the tortfeasor escapes, since neither item is attributable to the victim's fault.
A tortfeasor is liable for additional suffering caused his tort victim by inappropriate treatment by the attending physician; Hudgens v. Mayeaux, 143 So.2d 606 (La. App., 1962). See also Thibodaux v. Potomac Ins. Co., 201 So.2d 159 (La.App., 1967); Restatement Torts 2d s 457. The tortfeasor should similarly be liable to the victim for additional monetary damage caused by excessive treatment, which is also the result of the foreseeable cumulation of fault of tortfeasor and doctor.
As between tortfeasor and doctor, perhaps the tortfeasor should not ultimately be liable, since no one should have to pay a doctor for overtreatment. But as between tortfeasor and victim (not himself at fault *748 in accepting the treatments) the tortfeasor must be liable.
Hillebrandt v. Holsum Bakeries, Inc., 267 So.2d at 610 (note omitted).
In this case, for the reasons set forth above, we conclude that plaintiff failed to establish any causal connection between this accident and his lower back and psychological treatments. Accordingly, we find no merit in plaintiff's last assigned error.

Lost Past Wages
Next, we turn to defendants' appeal of the trial court's judgment of $35,000.00 for past lost wages. Defendants' position is that because plaintiff had become voluntarily unemployed several months before the December 1992 accident at issue here, he could not claim past wages at the November 1995 trial. According to defendants, claims for past lost wages are susceptible of precise mathematical calculation, and plaintiff's failure to offer such precise estimates rendered manifestly erroneous the jury's award for this element of damages.
We decline to second-guess the fact finder as defendants suggest. Initially, we observe that past lost wages are not susceptible to such precise calculations as defendants suggest, particularly where as here an individual has an earnings history but is unemployed at time of trial. In such instances:
Damages for loss of past wages are not necessarily limited to a multiplier of the amount earned at the time of injury. Folse v. Fakouri, 371 So.2d 1120 (La.1979). It can be computed on the amount the plaintiff would in all probability have been earning at the time of trial. Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976).
Callihan, at pp. 7-8; 668 So.2d at 741.
Second, we conclude that the jury was offered ample evidence from which it could have found as a matter of fact that plaintiff had been denied by the tortfeasor's negligence of the ability to earn the wages offered after the accident during the three years leading to trial. For instance, according to plaintiff's wife, plaintiff led an active life before the accident but could do little afterwards. Moreover, she indicated that there was no reason to believe that his decision to leave his prior position meant that he would not return to work soon, at least after the couple had exhausted its $15,000.00 in savings that they planned to live on during his work hiatus, a finding buttressed by evidence suggesting that plaintiff had acquired a truck in anticipation of starting a contracting business.
Since we can discern no manifest error in the jury's findings or abuse of discretion with respect to its award for past lost wages, that portion of the trial court's judgment too is affirmed.

Lost Future Income/Earnings Capacity
Next, we address defendants' contention that the jury's award of $42,000.00 for future lost wages constituted an abuse of discretion.
A plaintiff must prove by a preponderance of the evidence that he suffered a loss of earning capacity. Harig v. State of Louisiana, Bd. of Elem. & Sec. Education, 25,702 (La.App. 2 Cir. 3/30/94); 635 So.2d 485. To do so, he "must present medical evidence which indicates with reasonable certainty that there exists a residual disability causally related to the accident." Aisole v. Dean, 574 So.2d 1248, 1252 (La. 1991). While claims for past lost wages must be established with some degree of certainty, Dupre v. Exxon Pipeline Co., 93-1528 (La.App. 3 Cir. 6/1/94); 638 So.2d 1118, writ denied, 94-2200 (La.11/18/94); 646 So.2d 379, they need not be proven with mathematical certainty, but only by such proof as reasonably establishes the plaintiff's claim. Veazey v. State Farm Mut. Auto Ins., 587 So.2d 5 (La.App. 3 Cir.1991). This award may be supported by the plaintiff's detailed and uncorroborated testimony. Craig v. Burch, 228 So.2d 723 (La.App. 1 Cir.1969), writ denied, 255 La. 475, 231 So.2d 393 (1970). Additionally, the plaintiff's work experience and earning history is particularly useful in calculating the amount due for *749 loss of income. Morris v. Highlands Ins. Co., 525 So.2d 125 (La.App. 3 Cir.1988).
Rowe, at 22; 670 So.2d at 731.
It is well established that a loss of future earnings award is not merely based upon the difference between a plaintiff's earnings before and after a disabling injury. Such an award is predicted upon the difference between the plaintiff's earning capacity before and after the disabling injury. Folse v. Fakouri, 371 So.2d 1120 (La. 1979).
Callihan, at p. 8; 668 So.2d at 741.
For essentially the same reason set forth above, and because of his demonstrated work experience as a corrections officer, carpenter, and general laborer, we cannot say that the jury abused its much discretion in finding that plaintiff's accident-related cervical injuries would have an adverse impact on plaintiff's post-trial earning capacity, which in all probability would rest largely on his diminished capacity to perform physically.
Accordingly, that portion of the trial court's judgment too is affirmed.

Alleged Procedural Error
Finally, plaintiff maintains that the trial court erred in refusing to allow him to conduct a thorough cross-examination of Dr. McDaniel, an independent medical examination doctor plaintiff contends was hired by defendant for the sole purpose of sabotaging his claim without regard to the veracity of Dr. McDaniel's testimony. Specifically, plaintiff maintains that he should have been permitted to cross-examine Dr. McDaniel after Dr. McDaniel "made critical conclusions such as testifying that appellant did not need surgeries that he underwent, and more importantly, contradicted another defense medical expert, who testified that Dauzat had needed surgery since 1989 for his lumbar spine." Plaintiff alternatively contends that he was denied meaningful cross-examination of Dr. McDaniel, and no accurate statement of the law to the jury could cure the prejudice Mr. Dauzat has had to endure in the wake of Dr. McDaniel's biased testimony.
On earlier occasions, we have had occasion to express an opinion as to the great significance which attaches to the ability of a party to meaningfully cross-examine medical and other experts, particularly those whose reputation as "hired guns" justify a thorough examination. See, e.g., Rowe v. State Farm Mut. Auto. Ins. Co.; Frederick v. Woman's Hospital of Acadiana, 93-187 (La.App. 3 Cir. 11/3/93), 626 So.2d 467, writ denied, 93-2991 (La.2/4/94), 633 So.2d 169. In instances such as those described in the cited authority, this court has exercised and will continue to exercise its obligation to vigilantly ensure that every party's right to a truly free and fair trial will be respected.
Nevertheless, after reviewing the evidence in this case, we find no error on the part of the trial court. Moreover, even if we were to view the evidence differently, still we would have to conclude that the trial court's procedural errors, if any, were harmless, since Dr. McDaniel's testimony played no meaningful part in the outcome of this litigation, and the same would be said of the proffered evidence, if admitted, for the evidence would still overwhelmingly support the conclusion that the jury did not manifestly err in declining to attribute plaintiff's lumbar injuries to the 1992 accident at issue in this proceeding.

DECREE
In light of the foregoing, the judgment of the trial court awarding plaintiff past and future pain and suffering totaling $35,000.00 is amended to $100,000.00, the minimum amount that is reasonable under the circumstances. Defendants to bear all costs of these proceedings.
AFFIRMED AS AMENDED.
THIBODEAUX, J., concurs in part and dissents in part and assigns reasons.
THIBODEAUX, Judge, concurring in part and dissenting in part.
I agree that the jury abused its discretion in awarding only $35,000.00 in general damages. I also agree with the majority affirming the award for past lost wages and future lost wages or earnings capacity.
I disagree, however, that an award of $100,000.00 is the minimum award that is *750 reasonable under the factual circumstances of this case. In my view, a general damages award of $250,000.00 is the more reasonable minimum award. Further, the medical expenses awarded should have been that amount stipulated to, $216,322.54. For the reasons articulated below, I feel that these expenses were incurred as a result of the accident.
The aggravation of pre-existing conditions is compensable. Although plaintiff's psychological and lower back injuries pre-dated the accident of December 11, 1992, the symptoms and the various problems associated with these pre-existing injuries manifested themselves after the accident. The majority correctly states the law with regard to a presumption of causation. A presumption of disability is established
"... [i]f before the accident the injured was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.
"Further, an employee's disability is compensable if a non-disabling pre-existing condition is activated or precipitated into disabling manifestations as a result of a work-injury."
Lucas v. Insurance Company of North America, 342 So.2d 591, 596 (La.1977) (citation omitted).
The crux of the problem appears to be the majority's finding that there was no causal connection between the aggravation of the plaintiff's pre-existing problems and the accident. It is true that the jury appeared to have only attributed the plaintiff's cervical problems to the accident. In so doing, it failed to give any credence to the testimony with regard to the lack of obvious problems plaintiff was experiencing before the accident and the presence of substantial problems after the accident. The jury was manifestly wrong in not doing so. Because there was a reasonable possibility of a causal connection between the accident and the very real symptoms which the plaintiff was experiencing, all related medical expenses should be awarded and the general damages award should be increased to $250,000.00.
For the foregoing reasons, I respectfully concur in part and dissent in part.
NOTES
[1] Youn essentially restated the rule of Stobart v. State, 617 So.2d 880, 882-83 (La.1993), Reck v. Stevens, and Coco v. Winston Industries, but did so without going so far as to trample upon the constitutional authority of appellate courts to review the factual findings of trial courts. As we stated in Rowe v. State Farm Mut. Auto. Ins. Co., 95-669, p. 18 (La.App. 3 Cir. 3/6/96); 670 So.2d 718, 729, writ denied, 96-0824 (La.5/17/96); 673 So.2d 611:

Youn and Stobart did not have as their purpose the "mandate that the trial court's factual determinations cannot ever, or hardly ever be upset," at least where "the trial court verdict was clearly wrong based on the evidence, or clearly without evidentiary support." See generally, Ambrose v. New Orleans Police Amb. Serv., 93-3099, et al., at 7-9 (La.7/5/94), 639 So.2d 216, 220-222, citing La. Const. art. 5, Sections 5(C) and 10(B) and Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).